LUCIANO MONSERRATE *v.* STATE OF INDIANA.

[No. 974S198. Filed August 17, 1976.]

*Bernard M. Tetek, Gerald N. Svetanoff,* of Gary, *Kenneth M. Stroud,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Luciano Monserrate, was on May 12, 1967, jointly indicted with Luis Antonio Montes and Geraldo Torres Resto for the first degree murder of one Sharon Diane Potts, age nineteen. Resto was granted a separate trial and Montes was tried jointly with the Appellant. Co-defendant Montes, who was sixteen years of age at the time of trial, was found guilty of manslaughter and was sentenced to the Indiana Reformatory for a period of not less than two nor more than twenty-one years. The Appellant was convicted of the crime charged and was sentenced to death. Upon appeal to this court, this judgment of the trial court was reversed and the cause was remanded for a new trial. *Monserrate* v. *State,* (1971) 256 Ind. 623, 271 N.E. 2d 420.

The Appellant's second trial commenced on January 3, 1972. On January 22, 1972, the Appellant was again found guilty of first degree murder. He was sentenced to life imprisonment on February 7, 1972. It is from this judgment that this appeal is taken.

## I.

The Appellant's first contention is that the trial court erred in denying a defense motion which moved for a mistrial or, in the alternative, to quash the panel of prospective jurors. It is urged that the prospective jurors were exposed to improper and prejudicial out-of-court information which precluded the possibility of an unbiased and

impartial jury. That exposure included: (1) a newspaper article referring to the Appellant's prior conviction, death sentence, and retrial; (2) a conversation with a fellow prospective juror who had discussed the case with a prosecution witness; (3) information on the case received by one prospective juror from her daughter, who was acquainted with the deceased. Our review of the record indicates that the trial court acted properly to insure a fair trial in the face of these potential sources of prejudice.

It was during voir dire examination of prospective jurors that it became known that the newspaper article in question had been passed among some of the prospective jurors. The Gary Post-Tribune article was headlined, "CONVICTED SLAYER'S RETRIAL BEGINS WITH SELECTION OF JURY." In order to insure that the Appellant's jury did not possess knowledge of his prior conviction and death sentence, the trial judge endeavored to eliminate any prospective juror who had even heard the word "retrial." When it became apparent that a large number of prospective jurors had at least heard of the existence of the article, the court announced that all previous peremptory challenges by the defense would be treated as challenges for cause. Each juror who had been already accepted was individually polled by the trial court to see if he or she had seen or heard of the article.

The Appellant has presented no evidence which suggests that these efforts, along with the more typical procedures of voir dire, did not succeed in selecting impartial jurors. The Appellant admits that those individuals finally seated on the jury who were aware of the existence of the article in question also stated that they were unaware of the article's content. While the Appellant directs our attention to two jurors who overheard a conversation between a prospective juror (who was excused) and prosecution witness Geraldo Torres Resto, these jurors stated that this discussion had not caused them to form an opinion as to guilt or innocence. The out-of-court information received by one juror from her daughter is revealed in the record to be no information at all.

While the woman remembered talking to her daughter, she could not recall the content of those discussions.

Since the assassinations of the Kennedys and the Watergate affair, the United States Supreme Court has finally realized that in some cases it is impossible to secure jurors totally ignorant of current events. We pointed this out following the reversal by that court of our decision in the *Irvin* case. *Irvin* v. *Dowd*, (1961) 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751. See our majority and concurring opinions in *Baker* v. *State*, (1964) 245 Ind. 129, 195 N.E.2d 91.

In facing the realities of jury selection where there has been considerable publicity, the United States Supreme Court has recently said:

> "The constitutional standard of fairness requires that a defendant have 'a panel of impartial, "indifferent" jurors.' Irvin v. Dowd, supra, 366 US, at 722, 6 L Ed 2d 751, 81 S Ct 1639. Qualified jurors need not, however, be totally ignorant of the facts and issues involved.
>
> > 'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.' Id., at 723, 6 L Ed 2d 751, 81 S Ct 1639.
>
> At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights, and it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.' Ibid." *Murphy* v. *Florida*, (1975) 421 U.S. 794 at 799-800, 95 S.Ct. 2031 at 2036, 44 L.Ed.2d 589 at 594-595.

The voir dire in this case suggests no impression or opinion in the minds of the jurors which could not be set aside. Further evidence of impartiality is supplied by the fact that the Appellant challenged none of his jurors for cause. The trial court sustained a number of challenges for cause even though the prospective jurors involved, each stated that he or she had an open mind in spite of what had been read

or heard. The trial court did not abuse its discretion in denying the Appellant's motion for mistrial or to quash the venire.

We also note that the Appellant failed to use nine of the twenty peremptory challenges available to him. A trial court's overruling of challenges for cause is harmless error, if error at all, when the defendant does not exhaust his peremptory challenges. *Quarles* v. *State,* (1945), 223 Ind. 652, 63 N.E.2d 849. Moreover, the failure to exhaust peremptory challenges will act as a waiver of the alleged error on appeal. *Sutton* v. *State,* (1957) 237 Ind. 305, 145 N.E.2d 425. The result is the same here. The Appellant failed to exhaust his peremptory challenges, challenged none of his jurors for cause, and accepted the jury during the course of voir dire. He cannot now complain.

## II.

On December 17, 1971, the Appellant filed a pre-trial Notice of Alibi pursuant to Ind. Code § 35-5-1-1 (Burns 1975). The State filed an answer to that motion, pursuant to Ind. Code § 35-5-1-2 (Burns 1975) on December 17, 1971. That answer stated that the proof at trial would show that the crime occurred between 7:00 p.m., March 28, 1967, and 6:00 a.m., March 29, 1967, in East Chicago. The Appellant filed a Motion to Compel State to Comply With Alibi Statute, which would have been better entitled a motion for greater specificity, on December 27, 1971. This motion was granted by the trial court. An amended answer narrowed the time in question to between 8:00 p.m. March 28, 1967, and 6:00 a.m., March 29, 1967. It also defined the place in question as a described two block by four block area in East Chicago.

On December 31, 1971, the Appellant once again filed a motion to "compel compliance" with the alibi statute. This motion, however, was never ruled upon. When the prosecution at trial sought to introduce into evidence testimony which placed the Appellant at the scene of the crime, defense counsel

objected on the grounds of Ind. Code § 35-5-1-3 (Burns 1975). That statute reads as follows:

> "*Failure to file notices and statements—Evidence excluded.*—In the event of the failure of the defendant to file and to serve the defendant's original notice, as prescribed herein or the defendant's second notice as prescribed herein, or in the event of the failure of the prosecuting attorney to file and to serve the prosecuting attorney's statement as prescribed herein, the court may in its discretion extend the time for filing the same. At the trial, if it appears that the defendant has failed to file and to serve upon the prosecuting attorney the defendant's original notice of alibi as prescribed herein, the court shall, in the absence of a showing of good cause for such failure by the defendant, exclude evidence offered by the defendant to establish an alibi. *At the trial, if it appears that the prosecuting attorney has failed to file and to serve upon the defendant or upon his counsel the prosecuting attorney's statement as prescribed herein, the court shall, in the absence of a showing of good cause for such failure by the prosecuting attorney, exclude evidence offered by the prosecuting attorney to show that the defendant was at a place other than the place stated in the defendant's original notice and that the time was other than the time stated in the defendant's original notice.* At the trial, if it appears that the defendant has failed to file and to serve upon the prosecuting attorney, the defendant's second notice as prescribed herein, the court shall, in the absence of a showing of good cause for such failure by the defendant, exclude evidence offered by the defendant to establish that he was at a place other than the place specified in the prosecuting attorney's statement, and that the time was other than the time stated in the prosecuting attorney's statement." (emphasis added)

It is contended that the overruling of these objections by the trial court was reversible error. "The alibi statute, which is of material assistance in enabling the State to detect and disprove a fraudulent alibi, puts duties upon the State as well as the defendant. The defense of alibi is a legitimate defense, and if the accused takes the proper steps pursuant to the statute, the State must be required to discharge its duties, unless good cause be shown for failure so to do." *Pearman* v. *State,* (1954) 233 Ind. 111 at 119, 117 N.E.2d 362 at 366.

The question of noncompliance here centers on the provi-

sion of Ind. Code § 35-5-1-2 (Burns 1975) which requires that a statement of the "exact date" and "exact place" to be proved as the date and place of the crime be served upon the defendant or his counsel. In *Denton* v. *State*, (1965) 246 Ind. 155, 203 N.E.2d 539, this court addressed the problem of variance between the prosecutor's statement in answer to the notice of alibi and the evidence presented at trial. We concluded that reversal will not result from just *any* noncompliance with the alibi statute:

> "As this contention of appellant involves the question of variance, it is necessary to inquire into its materiality, as it is well settled that a variance, in order to be fatal, must be of such a substantial nature as to mislead the accused in preparing and maintaining his defense or be of such a degree as is likely to place him in second jeopardy for the same offense. See: *Madison* v. *State*, (1955) 234 Ind. 517, 542, 130 N.E.2d 35, 46." 246 Ind. at 157, 203 N.E.2d at 540. See also: *Aikens* v. *State*, (1972) 154 Ind. App. 36, 289 N.E.2d 152; *Napier* v. *State*, (1971) 255 Ind. 638, 266 N.E.2d 199.

It is appropriate to treat the question of specificity in the same way. Assuming that the date and place stated by the prosecution here was not sufficiently exact under the alibi statute, and assuming that there was no good cause for it, we should still ask whether this "inexactness" was material. The purpose of the alibi statute is not to compel the exclusion of evidence or mandate retrials for purely technical errors. If the "inexactness" complained of did not mislead the accused in the preparation or maintenance of his defense and is not likely to place him in second jeopardy for the same offense, then reversal is not required.

The Appellant does not argue that he was misled in the preparation of his defense. The facts reveal that he was not. The notice of alibi filed by the Appellant accounted for a period of time which encompassed the time of the crime proved at trial. The defense also placed the Appellant at places wholly outside the area described in the prosecution's amended answer. There is nothing in the record or in the

argument of the Appellant which suggests that the specification of a more exact time and place would have altered the presentation of evidence by the defense.

We note that the prosecutor explained to the trial court that the vagueness of his amended answer resulted from the fact that, at the time of its filing, the precise testimony to be presented was yet to be determined. This is unpersuasive. This was a second trial of a case which was based almost entirely on accomplice testimony. The evidence to be presented could have been predicted with some assurance. On the other hand, both the Appellant and his trial counsel had litigated this case once before also. There is little reason to think that anyone was surprised by the evidence which was presented at retrial.

### III.

The final contention of the Appellant urges that he was denied a fair trial when the State refused to supply evidence exculpating him. The trial court had granted a defense motion which requested that the prosecutor be ordered to disclose to the Appellant all evidence which was "favorable" to him. This order, and the prosecution response which said there was no such evidence, were filed before the filing of the Appellant's alibi notice.

We note at the outset that the State has a duty to disclose to a defendant evidence which tends to exculpate him. *White* v. *State*, (1975) 263 Ind. 302, 330 N.E.2d 84. This duty exists in the absence of any court order and the Appellant's argument thus does not depend on the presence of the order in this case. We also note that it would have been within the discretion of the trial court to grant discovery of the evidence in question, a two page memorandum by police which summarized the murder investigation and included statements by the Appellant. *State ex rel. Keller* v. *Criminal Court of Marion County*, (1974) 262 Ind. 420, 317 N.E.2d 433. No motion for such discovery was filed, however. And because

we do not see this evidence as exculpatory, we do not think the Appellant was entitled on that ground to disclosure.

The statements included in the document in question were used at trial to impeach the Appellant and his alibi defense. From the time of the filing of the notice of alibi, then, the evidence in question was most certainly *inculpatory* in nature. Before that time, we think the evidence is best characterized as neither inculpatory nor exculpatory. These self-serving statements were merely a potential source of impeachment, nothing more. The prosecutor had no reason to consider it favorable to the Appellant and was not obligated to produce it. It is suggested by the Appellant that his counsel could have better explored the alibi defense with his client and may have been able to "honestly" draft the notice of alibi if the prior inconsistent statements of the Appellant had been disclosed. Evidence is not exculpatory simply because it will aid in the fabrication of an alibi. Nor does evidence become exculpatory, as the argument of the Appellant suggests, because knowledge of it might cause an alteration in trial strategy.

The judgment of the trial court is affirmed.

Givan, C.J, Prentice, J., concur; DeBruler, Hunter, JJ., concur in result.

NOTE.—Reported at 352 N.E.2d 721.