CLYDE TINSLEY *v*. STATE OF INDIANA.

[No. 576S141. Filed January 3, 1977.]

*John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *John P. Avery,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Clyde Tinsley, was convicted of second degree murder on December 4, 1975. Sentenced to life imprisonment on December 17, 1975, the Appellant filed his motion to correct errors on February 11,

1976. It is from the denial of this motion on the day of its filing that this appeal is taken.

The Appellant was apprehended on the evening of September 4, 1975, by an off-duty Evansville policeman who witnessed the shooting of one Marcellus Wilcox. After chasing him on foot and making the arrest, the officer found near the Appellant a gun which was shown by ballistics tests to be the murder weapon. The Appellant was also identified by a relative of the decedent, a teenage neighbor of the decedent, and a friend of the mother of the teenage boy, all of whom witnessed the crime.

## I.

The first issue raised by the Appellant is whether the trial court erred in admitting into evidence State's Exhibits No. 8, No. 10 and No. 11. Exhibits No. 8 and No. 10 are color slides and Exhibit No. 11 is a black and white photograph. Each of these exhibits shows the body of the decedent, from approximately the waist up, in the morgue. Because an incision from an autopsy is also visible, the Appellant apparently contends that these exhibits were inflammatory and prejudicial.

This court has, in the past, been wary of the effects of post-autopsy photographs. *Warrenburg* v. *State*, (1973) 260 Ind. 572, 298 N.E.2d 434; *Kiefer* v. *State*, (1958) 239 Ind. 103, 153 N.E.2d 899. We do not think, however, that the exhibits here can be classified with those of the *Warrenberg* and *Kiefer* decisions. First, the exhibits in this case are not unnecessarily gruesome. The incision is visible in only two of the three exhibits questioned here. The incision portrayed extends across only part of the decedent's chest and appears to have been rather skillfully closed. It is located near the wounds inflicted on the decedent and does not appear to be any more gruesome than the wounds themselves.

Second, the exhibits in question here were relevant and material. Exhibit No. 8 is a front view of the decedent

showing two bullet wounds in the chest. Exhibit No. 10 is a color slide of the back side of the decedent showing exit wounds. No autopsy incision is visible in this exhibit. Exhibit No. 11 is a photograph taken from a position near the body's shoulder and again depicts the wounds inflicted in this case. These photographs, which elucidated testimony concerning the nature and extent of wounds which caused the death of the decedent, were properly admitted. *See New* v. *State,* (1970) 254 Ind. 307, 259 N.E. 2d 696.

## II.

The Appellant also urges error in the giving of certain instructions by the trial court. The first instruction so challenged is State's Instruction No. 1:

"SELF DEFENSE

The Court further instructs you that one person may kill another under such circumstances that the homicide or killing constitutes no crime but is justified by the law. This is known as the law or doctrine of self defense and may be stated for your guidance as follows:

If a person, being himself without fault, is assaulted in a place where he has a right to be so far as his assailant is concerned, he may, without retreating, repel his assailant by force; and he need not believe that his safety requires him to kill his adversary in order to give him a right to make use of force. When from the act of his assailant he believes and has reasonable ground to believe that he is in danger of losing his life or receiving great bodily harm from his adversary, the right to defend himself from such danger or apprehended danger may be exercised by him; and he may use it to any extent which is reasonably necessary and if his assailant is killed as a result of the reasonable defense of himself, he is excusable in the eyes of the law.

The question of the existence of such danger, the necessity or apparent necessity as well as the amount of force necessary to employ to resist the attack can only be determined from the standpoint of the defendant at the time and under all the then existing circumstances. Ordinarily one exercising the right to self-defense is required to act upon the instant and without time to deliberate and

investigate; and under such circumstances a danger which exists only in appearance is as real and imminent to him as if it were actual. A person in the exercise of the right of self-defense must act honestly and conscientiously.

When all danger and all apparent danger of the loss of life or of receiving great bodily harm from the assault of his assailant is at an end and passed, then the right to use force is at an end and should cease. The person exercising the right of self-defense must honestly believe and have reasonable cause to believe, when he makes use of force to protect himself from an assailant, that at the time he uses the force it is then necessary to do so to protect his life or protect his person from great bodily harm.

One who is in no apparent danger and who has no reasonable ground for such apprehension cannot kill another and successfully interpose the defense of self-defense."

It is argued by the Appellant that the last paragraph of this instruction acts as a "disparagement of the defense of self-defense" and would "imply to the jury that the court felt that there was, in fact, no apparent danger to the defendant-appellant, or that he has no reasonable ground for apprehension." We do not agree. This instruction was approved in its entirety by this Court in *Brown* v. *State*, (1971) 255 Ind. 594, 265 N.E.2d 699. It is approved here.

The Appellant also finds error in the giving of State's Instruction No. 5:

"Voluntary manslaughter is the killing of another unlawfully and voluntarily without malice, express or implied and without premeditation, upon a sudden heat, caused by sufficient provocation upon the part of the one killed. The law does not recognize the use of words alone as sufficient provocation to reduce the offense from murder to manslaughter, the other essential elements of the crime of murder being present.

Before provocation would be sufficient, the person killed must be doing some act which at the time is of such a character that so inflames the mind and excites sudden and angry passions of the one who does the killing that he does not act with deliberation but that his mind is in a heat of passion whereby he is incapable of deliberating.

If death, though wilfully intended, appears to have been inflicted immediately after provocation deemed by the law

adequate to excite sudden and angry passions, this fact rebuts the presumption of malice. The killing is still unlawful, however, because a person is bound to curb his passions, and the offense, if all other essential elements exist, is voluntary manslaughter.

This instruction was approved by this Court in its entirety in *New* v. *State, supra*. The Appellant argues, however, that this instruction neglects to instruct on the State's burden of proof beyond a reasonable doubt and thereby effectively shifts the burden to the defense. This is not persuasive. The jury was properly instructed on the State's burden of proof in Court's Instruction No. 4. All instructions are to be read together and construed as a whole. *Cockrum* v. *State*, (1968) 250 Ind. 366, 234 N.E.2d 479; 8A I.L.E. *Criminal Law* § 581 (1971). We also note that Court's Instruction No. 7 instructed the jury to consider all instructions as a whole.

As a part of his argument concerning State's Instruction No. 5, the Appellant contends that the trial court erred in refusing Defendant's Tendered Instruction No. 9, which defined voluntary manslaughter. Because State's Instruction No. 5 correctly instructed on this lesser included offense, there was no error in refusing the Appellant's tendered instruction on the same subject matter. *Fuller* v. *State*, (1973) 261 Ind. 376, 304 N.E.2d 305.

Finally, the Appellant urges error in the giving of State's Instruction No. 8, concerning evidence of flight, on the ground that there was no evidence of flight in this case. The officer who apprehended the Appellant testified that he identified himself to the Appellant and pursued him when the Appellant subsequently ran. "[I]t has been our understanding that whether or not there had been a flight in avoidance or merely an innocent exit, should be determined from the circumstances surrounding the departure." *Finger* v. *State*, (1973) 260 Ind. 524 at 527, 297 N.E.2d 819 at 821. The circumstances of this case permitted an inference of flight by the jury and

it was properly instructed on the consideration of such evidence.

The judgment of the trial court is affirmed.

NOTE.—Reported at 358 N.E.2d 743.