ROBERT MORGAN GROOMS AND ARTHUR JAMES MCBRIDE *v.* STATE OF INDIANA.

[No. 576S154. Filed August 24, 1978. Rehearing denied October 16, 1978.]

*Harriette Bailey Conn,* Public Defender of Indiana, *Bobby Jay Small, David P. Freund, Jerrilee P. Sutherlin,* Deputy Public Defenders, for appellant.

*Theodore L. Sendak,* Attorney General, *Daniel Lee Pflum,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellants Grooms and McBride were found guilty of first-degree murder at the conclusion of a jury trial in the Elkhart Superior Court on November 7, 1975. They were sentenced to life imprisonment. The crime in question is the murder of one Katherine Whitman, whose body was found on a county road on the morning of December 1, 1974.

Fourteen errors are asserted in this appeal concerning: (1) the denial of appellants' motions for change of venue; (2) an alleged non-compliance with the alibi statute by the state; (3) the admission of Appellant Grooms' custodial statements to police into evidence; (4) the admission of appellant Grooms' statements to a polygraph expert into evidence; (5) the admission of testimony concerning an armed robbery by appellants into evidence; (6) the impeachment of a defense witness by the state; (7) an alleged violation of the trial court's discovery order; (8) the admission of shell casings and test bullets into evidence; (10) the admission of a prison letter of appellant Grooms into evidence; (11) the exclusion from evidence of certain cigarette butts; (12) the denial of a motion for continuance, made in view of the absence of a defense witness; (13) the exclusion from evidence of appellant Grooms' version of his last encounter with the victim, and; (14) the sufficiency of evidence as to appellant McBride's conviction.

## I.

Appellants argue that it was error for the trial court to deny their motions for change of venue. First, it is argued that change of venue should have been automatic pursuant to Ind. R. Crim. P. 12, providing for such change of venue in death penalty cases. However, the death penalty was not in effect during the time of this case. Next, it is argued that appellants were entitled to change of venue because of pretrial publicity. This record contains evidence of several local news stories concerning the investigation of this case, some referring to appellants. However, the record does not demonstrate that impressions or opinions had been formed by jurors on the basis of this publicity. *See Monserrate* v. *State,* (1976) 265 Ind. 153, 352 N.E.2d 721, 723. Also, appellants did not exhaust their peremptory challenges. *See Morris* v. *State,* (1977) 266 Ind. 473, 364 N.E.2d 132; *McFarland* v. *State,* (1975) 263 Ind. 657, 336 N.E.2d 824. Thus appellants were in no way harmed by the court's denial of the change of venue motions, and there was no error in their denial.

## II.

It is next argued that this case should be reversed because of alleged non-compliance with the alibi statute, Ind. Code § 35-5-1-2 (Burns 1975). It is argued that the state, [3–5] in response to appellants' notices of alibi, did not give the "exact time and place" of the murder. Thus, it is claimed that testimony in the state's case-in-chief pinpointing the time and place of the killing should have been excluded. The state's response, in question here, stated that the crime occurred in Elkhart County, between 12:15 a.m. and 9:00 a.m. on December 1, 1974. The purpose of the alibi statute is not to compel the exclusion of evidence for purely technical errors. *Monserrate* v. *State,* (1976) 265 Ind. 153, 352 N.E.2d 721, 725. Further, the exact time of a killing does not have to be given, only the date. *Hampton* v. *State,*

(1977) Ind. App., 359 N.E.2d 276. The state's response here was sufficiently specific to comply with the alibi statute, and no error is presented here.

## III.

Appellants next argue that the trial court erred in denying appellant Grooms' Motion to Suppress, and in admitting evidence derived from an inadmissible statement. It is argued at length that statements given by appellant Grooms to police were in violation of the requirements of *Miranda* v. *Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Grooms' statements to the police, however, were never introduced as part of the state's case-in-chief in this trial. The only part of Grooms' custodial statements to police, admitted on direct testimony in this case, was a part admitted by Grooms himself. Then, other parts of Grooms' statements were admitted by the state in rebuttal, for impeachment purposes. There was no error in this use of Grooms' statements. *Harris* v. *New York,* (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1; *Johnson* v. *State,* (1972) 258 Ind. 683, 284 N.E.2d 517. It is further argued that Grooms' allegedly inadmissible statements were the police's only source for their knowledge of a state's witness, who testified at trial. This witness's testimony is thus argued to be "the fruit of a poisonous tree." However, the purpose of having this witness testify was to identify a gun which she said she saw in the possession of appellant Grooms, and neither appellant objected to the admission into evidence of this gun. Thus, whatever the merit of the "fruit of the poisonous tree" theory, no harm is apparent to the appellants from this witness' testimony. We thus find no error in the use of Grooms' custodial statements in this trial.

## IV.

Appellants next argue that the testimony of a polygraph expert, Leonard Harrelson, was improperly admitted into

evidence. Harrelson did not testify about any polygraph examinations in the investigation of this case, or the results of such tests. Rather, he testified about a conversation with appellant Grooms in a lounge, in which Grooms admitted killing the decedent. Harrelson testified that he advised Grooms of his rights on the day of this conversation. Further, Harrelson only testified as a rebuttal witness, after Grooms had testified on direct examination that he did not kill the decedent. Harrelson's testimony was thus admissible as a prior inconsistent statement of Grooms, and there is no error here.

## V.

Appellants next claim that it was error to admit evidence that they had engaged in an armed robbery the evening before the murder. However, evidence which is relevant to the facts in issue is admissible even if it tends to show guilt of another crime, especially if the two crimes are related. *Woodard v. State,* (1977) 267 Ind. 19, 366 N.E.2d 1160; *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843. The armed robbery in evidence here took place on the night before the crime in question. The victim was seen with appellant Grooms on that evening, before she was found dead the next morning. Further, both a gun used in the robbery and a gun seized in the robbery were used in the murder. The robbery thus being related to this murder, there was no error in the admission of evidence concerning it.

## VI.

Appellants claim it was error to allow the state to impeach defense witness Ruth Croatson on the subject of an armed robbery. They cite *Bryant v. State,* (1973) 261 Ind. 172, 301 N.E.2d 179, for the proposition that one cannot be impeached on a collateral matter, and that the test of whether a matter is collateral is whether it can be proved as part of the state's case-in-chief. However, as shown in issue V,

*supra*, it was proper to discuss this armed robbery in question in the state's case, because it was related to the murder for which appellants were being tried. This robbery was thus not a collateral matter, and it was proper for the state to attempt to impeach this witness by reference to her statements about it.

## VII.

In their next argument, appellants claim a violation of the trial court's pre-trial discovery order. This issue arose during the testimony of a police officer, Sergeant Petgen, who had prepared reports while investigating this case. The trial court found that such reports had never been in the possession of the prosecutor's office, nor in the prosecutor's file, and that the discovery order had thus not been violated. Appellants never requested a continuance at this point, or showed the necessity of prejudice in their preparation of the case because of Sergeant Petgen's testimony. There is thus no error here. *Hudson* v. *State*, (1976) 265 Ind. 302, 354 N.E.2d 164, 167.

## VIII.

Certain autopsy photographs of the decedent were admitted into evidence. These photographs were admitted in conjunction with the testimony of one Dr. Sankey, who testified without objection about the path of bullets through the decedent's neck, causing death. The witness then referred to these photographs, which were illustrative of his testimony. Photographs may be admitted when testimony concerning that which they depict would be proper. Their relevancy may be determined by an inquiry as to whether a witness would be permitted to describe verbally the objects photographed. *Murphy* v. *State*, (1977) 267 Ind. 184, 369 N.E.2d 411, 416. Autopsy photographs that are illustrative of the witness' testimony and tend to prove the cause of death are admissible under these general prin-

ciples. *Tinsley* v. *State,* (1977) 265 Ind. 642, 358 N.E.2d 743, 744; *Walker* v. *State,* (1976) 265 Ind. 8, 349 N.E.2d 161, 165. The same is true regardless of the natural gruesomeness of the pictures. *Quinn* v. *State,* (1976) 265 Ind. 545, 356 N.E.2d 1186, 1187. There was thus no error in the admission of these photographs into evidence.

## IX.

Appellants claim there was not an adequate foundation laid for the admission of both certain shell casings and certain test bullets and test casings into evidence. The shell casings in question were identified as having been found near the feet and head of decedent's body. The test bullets and test casings in question were identified as having been used by police in a test of a gun, which gun was identified as the one which appellants had told others they used in this crime. There is thus no merit in these foundation arguments.

## X.

Appellants next argue that a letter appellant Grooms wrote to one Nancy Nelson, while he was in jail, should not have been admitted into evidence. In essence, the argument is that the state's possession of this letter, in itself, demonstrates that such letter was illegally and unconstitutionally seized. The constitutional aspects surrounding the admission of prisoner's letters, in relation to both the Fourth Amendment and the concept of privacy, were extensively discussed by this court in *Rennert* v. *State,* (1975) 263 Ind. 274, 329 N.E.2d 595. In that case it was held that a prisoner, who had been specifically informed that officials were reading his mail, had no reasonable expectation of privacy as to such mail and that his letter was properly admitted. In the present case, appellant Grooms testified that he knew that jail officials read prisoner's mail before it was sent. He thus had no expectation of privacy, as discussed

in the *Rennert* case, and there was consequently no error in the admission of this letter at trial.

## XI.

It is next argued that the trial court's refusal to admit certain cigarette butts into evidence was reversible error. These butts were allegedly found in appellant Grooms' apartment. No police officer who searched Grooms' apartment, however, nor any other witness either identified the cigarette butts in question or was able to say they had personal knowledge of them. There was thus no proper foundation for the admission of this evidence, which the trial judge properly excluded.

## XII.

It is next asserted that this case must be reversed because of a refusal of a request for a continuance on the last day of trial. This request related to the absence of a witness who had been subpoenaed by appellant McBride the day prior to the request, but who did not respond to the subpoena and was absent when called at trial. The request for a continuance was then made and denied, at which time appellant McBride made an offer to prove. In this offer to prove, it was stated that the absent witness would have discussed prior statements of state's witness Jerry Cripe. These prior statements would have allegedly impeached Cripe's testimony at trial. However, a witness cannot be impeached by a prior statement unless a foundation is first laid by asking him about the statement. *Carroll* v. *State*, (1975) 263 Ind. 696, 338 N.E.2d 264; *Gradison* v. *State*, (1973) 260 Ind. 688, 300 N.E.2d 67; *Aikens v. State*, (1971) 256 Ind. 671, 271 N.E.2d 418. Cripe was never asked about the prior statements alleged here. Thus, it would have been improper for this absent witness to testify about Cripe's prior statements, and there is no error presented on this issue.

## XIII.

Appellants' next argument is that the trial court erred in refusing to allow appellant Grooms to introduce a portion of a statement he made to police, concerning a conversation with the victim. Other portions of this statement of Grooms were admitted by the state, for impeachment purposes, as previously discussed in issue III *supra*. The part which Grooms later attempted to admit, and which was excluded by the trial court on the state's objection, was to the effect that on the morning of the crime, at 2:30 a.m., Grooms and the victim left a bar, the victim stated that she wanted another drink but Grooms refused to buy her one, and that the victim then stated that she knew where she could get another drink and that she then walked off, and that was the last time Grooms saw her. Grooms was also prohibited from testifying about this sequence of events, independent of his statement to police.

None of the state's objections to this evidence, either at trial or on appeal, have any merit. It was objected at trial, for instance, that this evidence "would violate the dead man's statute" and also that it was a "self-serving declaration." On appeal, it is claimed that this portion of Grooms' statement is beyond the scope of the other parts of the statement used to impeach him. However, the specific facts and events Grooms was impeached about were closely contemporaneous with the events described in the excluded evidence. Also, even if the excluded evidence was beyond the scope of that which was admitted for impeachment purposes, Grooms was also prohibited from independently testifying about his version of events. It was thus erroneous for the trial court to exclude Groom's version of his encounter with the victim.

Because of the other evidence of Groom's guilt in this case, however, we find that the exclusion of this evidence was harmless beyond a reasonable doubt, and that upon all of the evidence in this case a jury could not have properly done other than convict. It is undisputed

that Grooms was with the victim, drinking and dancing, in two bars the evening before the killing. He admitted this much in his own testimony. The evidence also shows that Grooms and appellant McBride committed a robbery that evening. The victim was found dead the next morning. Ballistics tests of shell casings found near the victim's body established that they were fired from the gun used in this crime. Appellants had told a third person that this was the gun so used. The evidence is that Grooms, along with appellant McBride, inflicted various wounds, to the head and neck of the victim, from which she died, using guns connected with the robbery. We thus find that the error in the exclusion of evidence here was harmless, and does not mandate reversal of this case.

## XIV.

Appellant McBride finally claims that the evidence was insufficient to sustain his conviction of first-degree murder, and that the court's instruction on causation was [20] erroneously confusing and would have clouded the jury's thinking on the sufficiency question. As to the instruction on causation, it was a correct statement of the law drawn from *Hicks* v. *State,* (1938) 213 Ind. 277, 11 N.E.2d 171, and *Bivens* v. *State,* (1970) 254 Ind. 184, 258 N.E.2d 644. The argument made here, that this instruction should not have been given, assumes the truth of appellant McBride's factual allegations on the sufficiency of evidence question. As to the sufficiency question, the evidence most favorable to the state is that appellant McBride and appellant Grooms both inflicted various wounds, with different guns, to the head and neck of the victim, from which wounds she died. The evidence is thus sufficient to support appellant McBride's conviction and the giving of the causation instruction in question, and no error is preserved for our review here.

The judgment of the trial court is affirmed.

Givan, C.J., Hunter, J., concur; DeBruler, J., Prentice, J., concur in result.

NOTE.—Reported at 379 N.E.2d 458.