David W. SMITH, Appellant,

v.

STATE of Indiana, Appellee.

No. 378S49.

Supreme Court of Indiana.

May 27, 1981.

John S. Capper IV, Berry, Capper & Tulley, Crawfordsville, Edward P. Dumas, Dumas & Moriarty, Rensselaer, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., for appellee.

PIVARNIK, Justice.

Defendant-appellant David W. Smith was charged in Parke Circuit Court with four counts of first degree murder, Ind.Code § 35–13–4–1 (Burns 1975). These charges arose out of the February 14, 1977, shotgun slayings of Gregory Brooks, Ralph Spencer, Raymond Spencer and Reeve Spencer in their mobile home near Hollandsburg, Indiana. Daniel Stonebraker, Michael Wright and Roger Drollinger were also charged in connection with these killings. This Court recently disposed of Drollinger's direct appeal. *Drollinger v. State*, (1980) Ind., 408 N.E.2d 1228.

Appellant Smith's case was venued to the Jasper Circuit Court. He was tried to a jury in October, 1977, and convicted on all four counts. Thereafter, the trial court sentenced Smith to four life sentences and ordered that they be served concurrently. Smith raises five issues for our consideration on this appeal, concerning: (1) whether the trial court erred in refusing his tendered preliminary instruction on the defense of insanity; (2) whether the trial court erred in permitting State's witness Michael Wright to testify; (3) whether the trial court erred in admitting into evidence certain photographs; (4) whether the trial court erred in refusing to permit certain testimony from defense witness Donald Hopper; and (5) whether the trial court erred in refusing to grant a mistrial due to alleged prosecutorial misconduct.

The State presented extensive evidence of Smith's involvement in these crimes. Smith does not challenge the sufficiency of the evidence on this appeal, and our opinion in the *Drollinger* case adequately detailed the circumstances surrounding the perpetration of these four slayings. *See Drollinger v. State, supra*, Ind., 408 N.E.2d at 1242–43. Two of Smith's companions, Daniel Stonebraker and Michael Wright, unequivocally identified Smith as an active participant in these murders. Also, the lone surviving victim of this incident, Betty Spencer, clearly identified Smith as one of the four killers.

I.

Appellant Smith first contends the trial court erred in refusing his tendered preliminary instruction concerning the defense of insanity. This instruction defined this defense in accordance with our decision in *Hill v. State*, (1969) 252 Ind. 601, 251 N.E.2d 429. Smith argues the preliminary instruction should have contained a definition of insanity such as the one provided in his tendered instruction, and that the failure to give his tendered instruction constituted a failure to instruct the jury on a properly raised defense.

■ We hold the court did not err in refusing this instruction. Ind.R.Crim.P. 8(F) provides in part:

"When the jury has been sworn the Court shall instruct in writing as to the issues for trial, the burden of proof, the credibility of witnesses, and the manner of weighing the testimony to be received. . . . ."

The trial court in this case did not, as appellant asserts, fail to instruct the jury that Smith's alleged insanity was one of the issues in the case. Preliminary instruction number three stated:

"To the charging information in each of the four cases . . ., the defendant has entered a plea of not guilty by reason of insanity; that is, the defendant claims that he was insane at the time the offenses charged were committed. Upon the issues thus joined the burden rests upon the State of Indiana to prove to each juror, beyond a reasonable doubt, every material allegation of any one or all of the charging informations.

In other words, the proof of the commission of a crime is not complete unless each element thereof is proven, and the doctrine of reasonable doubt applies to each element."

Record at 335. In addition, preliminary instruction number seven informed the jury that:

"Under the issues joined by the defendant's plea the defendant may rely upon

any defense which is disclosed by the evidence, other than alibi."

Record at 340.

Thus, in accordance with Criminal Rule 8(F), the court properly instructed the jury that insanity was one of the issues for trial. *See* Ind.R.Tr.P. 51. *See also Pollard v. State*, (1979) Ind., 388 N.E.2d 496, 504–05. Further, the court's final instructions fully explained the concept of insanity and guided the jury in their analysis of Smith's insanity defense. Thus, in this instance, even if the court should have instructed the jury more extensively concerning insanity in the preliminary instructions, the matter was "rectified by final instruction." *Everly v. State*, (1979) Ind., 395 N.E.2d 254, 257. The trial court did not err in refusing appellant's tendered instruction.

## II.

Appellant next argues the trial court erred in permitting State's witness Michael Wright to testify. Smith contends that the State permitted Wright to violate the court's separation of witnesses order. When the court denied Smith's objection to Wright's testimony, Smith moved for a mistrial. The trial court also denied this motion.

The record reveals that Daniel Stonebraker testified for the State before Michael Wright was called as a witness. As noted above, Stonebraker and Wright participated in these killings with Smith and Drollinger. During Stonebraker's testimony, he implicated Smith in these slayings. When the prosecutor called Michael Wright as a witness, defense counsel requested and received permission to conduct a *voir dire* examination of Wright before any testimony was elicited. This questioning established that Wright had been housed in the same cell as Stonebraker in the Parke and Jasper County jails. Defense counsel further elicited from Wright that he and Stonebraker had carried on some conversation after Stonebraker testified in the trial. Counsel then asked the court to block Wright's appearance as a witness, due to his apparent violation of the court's separation

of witnesses order. When the trial court denied this request, appellant Smith made his motion for a mistrial.

The trial court properly permitted Wright's testimony. Further *voir dire* questioning by the prosecutor and the trial court established that Wright and Stonebraker talked about who was in attendance at the trial, but did not discuss the testimony previously given by Stonebraker or that to be given by Wright. Whether to order the separation of witnesses is a question addressed to the trial court's discretion. *E. g., Cox v. State*, (1981) Ind., 419 N.E.2d 737, 739; *Anthony v. State*, (1980) Ind., 409 N.E.2d 632, 634. Likewise, even where a clear violation of such an order is shown, the trial court may permit the violating witness to testify. *E. g., Ashbaugh v. State*, (1980) Ind., 400 N.E.2d 767, 771; *Page v. State*, (1979) Ind., 395 N.E.2d 235, 238; *Brannum v. State*, (1977) 267 Ind. 51, 56, 366 N.E.2d 1180, 1183; *Buchanan v. State*, (1975) 263 Ind. 360, 369, 332 N.E.2d 213, 219; *Butler v. State*, (1951) 229 Ind. 241, 246, 97 N.E.2d 492, 495.

In this case, Wright denied having discussed testimony with Stonebraker. Thus, while the separation order was, in fact, technically violated, since violation obviously did not occur due to any improper action on the part of Wright or Stonebraker. Moreover, as the State points out, the primary reason for separating witnesses is to insure that one witness will not adjust his testimony to make it more consistent with testimony given earlier by other witnesses; as noted above, Wright denied talking to Stonebraker concerning any testimony. Moreover, defense counsel was armed with several written pretrial statements given by Wright concerning these crimes, and was therefore in a position to thwart any attempt by Wright to alter his testimony in any way. We hold the trial court did not abuse its discretion in permitting Wright to testify. *Ashbaugh v. State, supra; Page v. State, supra.*

## III.

Appellant Smith next argues the trial court erred in admitting into evidence

State's Exhibits twelve, thirteen, fourteen and fifteen. These exhibits were photographs of the four victims taken during the autopsies. Smith argues these photographs were repetitive and gruesome in character, and served only to influence the minds of the jurors.

■ The challenged exhibits were part of a series of photographs admitted into evidence depicting the crime scene and the victims. In *Drollinger v. State*, (1980) Ind., 408 N.E.2d 1228, the appellant challenged the admissibility of a very similar series of photographs relating to the same crimes. We held that these exhibits were properly admitted in spite of their gruesomeness. We noted in *Drollinger v. State* that the four photographs in question in the case now before us were illustrative of the pathologist's testimony and tend to show the nature and extent of the wounds and to prove the cause of death. *Id.* at 408 N.E.2d at 1238. *See Grooms v. State*, (1978) 269 Ind. 212, 219–20, 379 N.E.2d 458, 463; *Murphy v. State*, (1977) 267 Ind. 184, 195, 369 N.E.2d 411, 416. Moreover, as in the *Drollinger* case, because the entire series of photographs depicted different aspects of the case, they were not repetitious or cumulative. The trial court did not err in admitting these exhibits into evidence.

## IV.

Appellant contends the trial court erred in refusing to allow defense witness Donald Hopper to testify concerning certain matters. Smith presented an insanity defense, and sought to show that he acted under the psychological influence of Roger Drollinger, the acknowledged leader of the group that committed these murders. In pursuing this tactic, the defendant called Donald Hopper as a witness. Hopper testified that he was chief deputy prosecutor in Montgomery County, Indiana. Hopper stated that he was familiar with Roger Drollinger through various reports he had read and through his participation in a number of criminal prosecutions initiated against Drollinger in Montgomery County. Defense counsel then asked Hopper whether, based on his past experience with Drollinger, he was able to determine whether Drollinger had influence over young people. The State's objection to this question was sustained due to a lack of proper foundation.

Defense counsel then elicited from Hopper that he had received information from police reports and other individuals concerning Drollinger's involvement with young people. Counsel again asked Hopper whether Drollinger had influence over young people, and the trial court again sustained the State's objection to this question. Appellant then made an offer to prove, in which he asserted that Hopper would testify that Roger Drollinger has influence over young people. Appellant now argues he should have been permitted to obtain an answer to the question mentioned above.

■ We hold the trial court properly sustained the State's objections to these questions. There has been no showing that Hopper knew Drollinger personally, or had even talked with him. Hopper's contact with Drollinger arose through various criminal prosecutions, and, according to his testimony, Hopper's knowledge of Drollinger was gained during those cases and from police reports and information he received relative to those prosecutions. There is no evidence that those cases and reports contained any information which would have indicated an ability on Drollinger's part to influence young people. In addition, there was no showing that Hopper ever witnessed, or was ever aware of, any contact between Drollinger and the "young people" to which appellant referred. Further, appellant did not show that Hopper was specially trained in any behavioral science to thereby be qualified to render an opinion on so general a topic as one's psychological influences over other people. It is, therefore, difficult to see how Hopper could have, under the facts of this case, formulated a meaningful and admissible opinion concerning Drollinger's possible influences over young people. For these reasons, the trial court did not err in refusing to permit this testimony.

### V.

Finally, appellant Smith claims he was victimized by an act of prosecutorial misconduct which allegedly occurred during final argument. The record reveals that, prior to the beginning of final argument, defense counsel requested that the trial court admonish the prosecutor to refrain from discussing possible sentences or parole, or facts which were only within the personal knowledge of the prosecutor or the police, such as the amount of time spent preparing the case. Appellant further requested a prohibition of:

> "any other personal comments that would be outside the scope of final argument and would imply to the jury, or prejudice this jury in giving, rendering a fair verdict with this defendant. And we would further show to the Court that these reasons could be backed by the statements [which] were made in Hartford City in a companion case. Counsel has listened to final argument and these items have come up. We feel it would be reversible error for these comments to be made to this jury, and that an admonishment to the jury by the Court upon making would not be enough to remove any taint or prejudice that may result."

Record at 2115. The trial court responded to appellant's request with the following admonishment:

> "Confine your comments to what the evidence and facts show, and your observations, proper observations in relation thereto, and we'll get along just fine."

Record at 2116. This exchange occurred outside the hearing of the jury.

Thereafter, the State and the defense presented their final arguments. At the beginning of the State's rebuttal comments, the following exchange occurred:

> "*The Court*: The State may proceed with their closing.
>
> *Mr. Daugherty*: Your Honor, opposing counsel, ladies and gentlemen of the jury. As you look at this horrendous crime I think the thought probably crosses your mind as it did mine as to how this thing could happen in the first place. And I

think those of you who read "In Cold Blood" by Truman Capote can . . .

> *Mr. Capper*: Object, Your Honor, and we would ask for a mistrial. That'd be referring to "In Cold Blood" or any other book of any kind. How can this jury render a fair verdict when this prosecutor starts in by throwing that out to this jury? That's ridiculous.
>
> *The Court*: I'm going to sustain the objection and order the jury to disregard any reference to any other nominals [sic].
>
> *Mr. Capper*: We would move for a mistrial, Judge.
>
> *The Court*: Motion for mistrial is overruled and denied."

Record at 2177–78. Appellant now argues that the prosecutor deliberately ignored the admonition given by the court before final argument. He contends this statement amounted to prosecutorial misconduct and warranted a mistrial.

■ We do not agree. First, we are not prepared to say that this partial statement amounted to misconduct on the part of the prosecutor. Neither appellant's pre-argument motion nor the court's admonition specifically mentioned the topic to which the prosecutor referred in his final comments. In addition, appellant's objection effectively silenced the prosecutor in mid-sentence and thereby prevented the completion of the statement; thus, we have no way of knowing what specific point the prosecutor planned to make by referring to *In Cold Blood*.

Second, even if this brief, partial statement did rise to the level of misconduct, we do not believe such comments mandated a mistrial or now mandate a new trial. Appellant has cited us to no other occasion on which the prosecutor mentioned this book. "Thus, we are concerned with only one isolated instance of questioned behavior, not 'repeated instances [which] evidence a deliberate attempt to improperly prejudice the defendant.' *Maldonado v. State*, (1976) 265 Ind. 492, 499, 355 N.E.2d 843, 845." *Drollinger v. State*, (1980) Ind., 408 N.E.2d 1228, 1240. Further, because the prosecutor did not complete the challenged statement or

make further reference to the book, this incident could not have had any sort of persuasive effect on the jury's decision. Just as in *Drollinger v. State, supra,* in the face of overwhelming direct evidence of Smith's guilt, we do not believe this incident placed him "in a position of grave peril to which he should not have been subjected." *Id.* at 408 N.E.2d at 1240; *Stanley v. State,* (1980) Ind., 401 N.E.2d 689, 693; *Lyda v. State,* (1979) Ind., 395 N.E.2d 776, 780; *Rock v. State,* (1979) Ind., 388 N.E.2d 533, 536; *Maldonado v. State, supra; White v. State,* (1971) 257 Ind. 64, 78, 272 N.E.2d 312, 320.

Finding no reversible error, we affirm the judgment of the trial court.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.