**Robert Morgan GROOMS, Plaintiff,**

v.

**J. CALDWELL, Asst. Investigator, ISP; Carl Swiehart, Investigator, ISP; Barry Nothstine, Admin. Asst., ISP; and Dick Clark, Superintendent, ISP, Defendants.**

Civ. Nos. S90–211, S90–235.

United States District Court, N.D. Indiana, South Bend Division.

Dec. 16, 1991.

Grooms, pro se.

Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

These cases are brought by Robert Morgan Grooms, *pro se,* an inmate at the Indiana State Prison.[1] This court takes note of the proceedings that were had telephonically but on the record on September 3, 1991.

■ The defendant filed a motion for summary judgment on November 22, 1991, and complied with *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982). The plaintiff's response to the aforesaid motion for summary judgment was filed on December 6, 1991 and has been carefully examined by this court. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *accord Arkwright–Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co.,* 818 F.2d 591, 593 (7th Cir.1987). A material question of fact is a question which will be outcome-determinative of an issue in that case. *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir. 1984).

Recently, the Supreme Court of the United States took the opportunity to address Rule 56. In two cases decided on the same day, the Court expanded the scope of the application of Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed

the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

■ After *Celotex,* it is clear that a non-moving party may not rest on its pleadings to avoid summary judgment. 477 U.S. at 325–26, 106 S.Ct. at 2553–54. *See also Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The initial burden is on the moving party to demonstrate " 'with or without supporting affidavits' " the absence of a genuine issue of material fact, and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56). Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.' " *Id.* Furthermore, in *Anderson,* the Court held that what facts are material in a specific case shall be determined by the substantive law controlling that case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In addition, the court went on to interpret Rule 56 as requiring that the courts analyze summary judgment motions utilizing the standard of proof relevant to that case or issue. *Id.* at 252–55, 106 S.Ct. at 2512–14. For recent academic insight into *Celotex* and *Anderson,* see Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183, 194 (1987), where the author states:

The recent Supreme Court cases likely require that summary judgment be more readily granted.... This emerging trend signals a new era for summary judgment, one in which the old presumptions are giving way to a policy of balancing and efficiency, and the mechanism is more appropriate to double as a sufficiency motion—allowing some sort of trial itself on the paper record.

---

1. For published opinions in which Robert Morgan Grooms is the plaintiff *see Grooms v. Snyder,* 474 F.Supp. 380 (N.D.Ind.1979); *Grooms v. State,* 269 Ind. 212, 379 N.E.2d 458 (1978), *cert.*

*denied,* 439 U.S. 1131, 99 S.Ct. 1053, 59 L.Ed.2d 93 (1979), and *Grooms v. Fervida,* 182 Ind.App. 664, 396 N.E.2d 405 (1979).

For the judicial epilogue of *Celotex,* see *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d at 33. A recent object lesson applying these ideas is found in *Puckett v. Soo Line Railroad Co.,* 897 F.2d 1423 (7th Cir.1990), *Jamison–Bey v. Thieret,* 867 F.2d 1046 (7th Cir.1989), and *Richardson v. Penfold,* 839 F.2d 392 (7th Cir.1988). For an exact and recent analysis on this subject, see Friedenthal, *Cases on Summary Judgment: Has There Been a Material Change in Standards?* 63 Notre Dame L.Rev. 770 (1988).

■ In their official capacities, each of the state defendants are entitled to immunity for claims for money damages under the Eleventh Amendment to the Constitution of the United States. The Eleventh Amendment states as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

*See Kashani v. Purdue University,* 813 F.2d 843 (7th Cir.), *cert. denied,* 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987); *Owen v. Lash,* 682 F.2d 648 (7th Cir.1982); *Sheets v. Indiana Department of Corrections,* 656 F.Supp. 733 (S.D.Ind.1986). For recent authority consistent with *Kashani,* 813 F.2d at 843, see *Shelton v. Trustees of Indiana University,* 891 F.2d 165 (7th Cir. 1989). *See also Kroll v. Board of Trustees of the University of Illinois,* 934 F.2d 904 (7th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991); *Cosby v. Jackson,* 741 F.Supp. 740 (N.D.Ill.1990), *aff'd,* 936 F.2d 940 (7th Cir.1991) and *Rodenbeck v. Indiana, Leaking Underground Storage Tank Div.,* 742 F.Supp. 1442 (N.D.Ind.1990). Any and all damage claims against the defendants in their official capacities are now **DISMISSED** under the mandates of the Eleventh Amendment of the Constitution.

From its inception, this case has narrowed considerably. It is the court's intent to deal with the present narrowed version. This court has also made a very careful examination of the record and the in camera submissions that are at issue here. This court is also sensitive to the basic values that inhere in Chief Justice Hughes' great opinion in *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). In that seminal case, the great Chief Justice sowed the seeds with reference to prior restraints on free speech. It must be said that some of those values prevail in a more limited fashion in the context of a maximum security prison such as the Indiana State Prison.

■ Early on in these cases, it was at least inferred, if not categorically stated by the plaintiff, that one of the persons portrayed in the photographs of people in the garb of the Ku Klux Klan (hereafter "KKK") was a relative, possibly a granddaughter or grandson of this plaintiff. That contention seems to have vanished from this case. What remains is a color photograph of three men dressed in the full regalia of the KKK, standing before a burning cross; a written publication entitled "Miles of Michigan, or Seed of the Dragon," which contains photographs of various people in Klan robes and burning crosses; and a publication entitled "The Ultimate Final Solution of the Jewish Problem." These are all present in the materials provided to this court.

This court is all too familiar with the Holmesian doctrine of free speech that emanated out of the jurisprudence following the Espionage Act of 1917 and the Sedition Act of 1918, both of which were far more egregious than anything that John Adams may have attempted in the Alien and Sedition Acts of 1798. In any event, the Holmesian doctrine emerged in a series of cases in that particular context. *See Schenck v. United States,* 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919), and the dissent of Justice Holmes in *Gitlow v. New York,* 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). With all deference to that preeminent member of the Supreme Court, it is far easier to quote Justice Holmes than it is to apply what he says in concrete reality. The task here deals with both the larger values of the First Amendment and

a particularization of them in the context of a maximum security prison. Much closer to reality for the purposes here are the decisions of the Supreme Court of the United States in *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), and *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Working out the various mandates of the First Amendment of the Constitution of the United States in the context of a maximum security prison is not an easy task. *See*, e.g., *Reed v. Faulkner*, 842 F.2d 960 (7th Cir.1988); *Hunafa v. Murphy*, 907 F.2d 46 (7th Cir.1990); *Swank v. Smart*, 898 F.2d 1247 (7th Cir.), *cert. denied*, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990); *Johnson–Bey v. Lane*, 863 F.2d 1308 (7th Cir.1988); and *Williams v. Lane*, 851 F.2d 867 (7th Cir.1988), *cert. denied*, 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989). With regard to the free exercise of religion or non-religion, *see also Childs v. Duckworth*, 509 F.Supp. 1254 (N.D.Ind. 1981), *aff'd*, 705 F.2d 915 (7th Cir.1983), and *Young v. Lane*, 922 F.2d 370 (7th Cir.1991).

Certainly, the Supreme Court of the United States in *O'Lone v. Estate of Shabazz*, 482 U.S. at 342, 107 S.Ct. at 2400, and *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), imposed a significant bundle of discretion in the hands of prison administrators when dealing with the values imbedded in the First Amendment. Within the week, the Supreme Court has dealt with a particular slice of First Amendment rights in a prison context in *Simon & Schuster, Inc. v. Members of New York State Crime Victims Board*, — U.S. ——, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991). Contrary to the facts here, the focus there was on more purely defined First Amendment values and not on the *Turner–O'Lone* prison security concerns.

The term "final solution" emanates historically from Nazi Germany and specifically from a conference held in a suburb of Berlin in 1942. Such was the infamous Wannsee Conference held under the direct auspices of SS General Reinhard Heydrich on December 10, 1941. *See, Adolf Hitler* by John Tolan, Volume II, page 805.

The direct confrontation in this case is between this *pro se* plaintiff inmate seeking to have possession of the aforesaid three items on the one hand, and the direct assertions under oath of Karl Swiehart and Barry Nothstine, as well as the administrative procedure number 02–00–105 which deals with offender correspondence, all of which is in the record.

Certainly, Justice Thurgood Marshall ruled some years ago that an individual citizen has the privacy right to possess pornographic materials. *See Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

There is no doubt that this plaintiff would have a right under the First Amendment of the Constitution to possess these materials if he lived in open society. But he does not live in open society, and even if the First Amendment of the Constitution of the United States continues to be liberally read for those outside the prison walls, a different question is raised with regard to the right to possess these particular items in the prison context. The record is undisputed that this plaintiff has been given an opportunity to see and to read all of these items under the supervision of prison authorities. The concern that is critical in the Swiehart and Nothstine affidavits has to do with this plaintiff's ability to display and circulate these items in a prison population that contains many, many persons of the African American race who would potentially be incited to violence by at least two of these items. There is no question that on the face of it, administrative procedure 02–00–105 is constitutionally adequate and does not run counter to the teaching of *O'Lone*, 482 U.S. at 342, 107 S.Ct. at 2400 and *Turner*, 482 U.S. at 78, 107 S.Ct. at 2254. The question then becomes whether it is a violation of the Constitution of the United States to have withheld these items from the personal possession of the plaintiff.

To digress for a moment, this court dismissed the defendant Clark in S90–235 because of the lack of personal involvement under *Monell v. Dept. of Social Services*,

436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny. *See, Rascon v. Hardiman,* 803 F.2d 269 (7th Cir.1986); *Wellman v. Faulkner,* 715 F.2d 269 (7th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984); *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir.1981); and *Adams v. Pate,* 445 F.2d 105 (7th Cir. 1971). Likewise, such dismissal must be granted in S90–211, for the same reason. The defendant Clark is **DISMISSED** in cause number S90–211. **SO ORDERED.**

This court is very familiar with the case of *Kincaid v. Rusk,* 670 F.2d 737 (7th Cir.1982), and does not see the issue here in those terms. *Cf. Salazar v. Chicago,* 940 F.2d 233 (7th Cir.1991). The conceptual mix is *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), and most recently, *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). It also needs to be emphasized that *Martinez* was largely concerned with "outgoing correspondence" and *Thornburgh* emphasized that the *Martinez* holding was so limited. This is certainly not a case of outgoing correspondence.

When one examines *Thornburgh, Turner,* and *O'Lone* in their totality and examines this regulation as applied in this instance to these three items, this court is in no way hesitant to find that both the regulation and its application here in the limited factual context of this case passed constitutional muster. One might be tempted to argue that these three items were personal property within the meaning of *Parratt v. Taylor,* 451 U.S. at 527, 101 S.Ct. at 1908, and that their confiscation cannot be the basis of a constitutional claim under *Parratt,* and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). That might be a tempting analysis, but it is not one that the court adopts. However, this court is convinced that when the aforesaid Supreme Court decisions decided within the last two decades are laid side by side and end to end, these participating defendants have not arguably violated clearly established constitutional rights of this plaintiff.

It is the belief of this court that under the en banc decision in this circuit of *Rako-*

*vich v. Wade,* 850 F.2d 1180 (7th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988), the defendants are entitled to qualified immunity as a matter of law. *See also Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The sensitive subject matter has compelled close individual and careful attention by this court to this case. The result of the same is a conclusion that there is no showing that the protective constitutional rights of this plaintiff have been violated.

In finality, it must be said that permitting this plaintiff to have in his hand in the general population of this maximum security prison this kind of psychologically inflammable material could well incite a riot. It also must be said that permitting the inmates of the Indiana State Prison to see the televised biography of Indiana's KKK Grand Dragon, D.C. Stephenson, *see Stephenson v. State,* 179 N.E. 633 (1932), or to permit the televising of the film *Mississippi Burning* is one thing, but to permit this kind of tangible documentary material to be in the hands of an inmate circulating through this prison is another thing. With all deference to that argument, permitting the inmates to see those two televised productions does not require these prison authorities to permit this plaintiff to have these documents in hand while he is in the general population of this prison. As the Supreme Court has most recently interpreted the First Amendment of the Constitution of the United States in the prison context, such is not required. The preventing of the same under the limited circumstances of this case does not violate the basic premises of the First Amendment in the context of a maximum security prison.

Therefore, these defendants are entitled to summary judgment as a matter of law. Judgment shall enter for the defendants and against the plaintiff. Each party will bear its own costs. **IT IS SO ORDERED.**