ATTORNEYS FOR APPELLANT
Steven E. Ripstra
Jasper, Indiana

Lorinda Meier Youngcourt
Huron, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana



## In the
## Indiana Supreme Court

No. 74S00-0707-DP-263

ROY LEE WARD,
*Appellant (Petitioner below),*

v.

STATE OF INDIANA,
*Appellee (Respondent below).*

Appeal from the Spencer Circuit Court, No. 74C01-0107-CF-158
The Honorable Robert J. Pigman, Judge

On Petition for Rehearing

**June 26, 2009**

**Dickson, Justice.**

The defendant, Roy Lee Ward, seeks rehearing of this Court's affirmation of his death sentence on direct appeal, Ward v. State, 903 N.E.2d 946 (Ind. 2009), asserting that one of the issues presented in his appeal—that the trial court should have granted his "for-cause" challenge to one of the jurors—was not addressed. Although not separately enumerated or identified as a separate issue in the appellant's brief, the defendant's assertion of this claim can be discerned within his other arguments. We elect to address this as part of the direct appeal of the defendant's death sentence and grant rehearing for this purpose, but conclude that the judgment of the trial court should be affirmed.

On direct appeal, the defendant claimed several grounds for reversal of his death sentence. Among these was the claim that the trial court erred when it declined to dismiss several prospective jurors for cause. In particular, the defendant pointed to ten prospective jurors whom he challenged on a variety of grounds, all of which the trial court denied. As a result, the defendant used his preemptory strikes against several of these ten potential jurors. This, the defendant claimed, prejudiced him, as he exhausted his preemptory strikes when for-cause challenges should have applied, thereby forcing him to accept jurors who were biased against his evidence. Ward, 903 N.E.2d at 954. Of the ten challenged jurors, only one—Juror 105—was ultimately selected to serve on the jury. Relying upon Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), we held that even if the trial court erred in denying the defendant's for-cause challenges, the salient inquiry is whether any of the jurors who ultimately sat was biased. Ward, 903 N.E.2d at 954-55. We now understand that the defendant sought in his appeal not only to assert error in his loss of preemptory challenges due to the trial court's denial of his challenges for cause, but also specifically to claim error in denying the for-cause challenge to Juror 105 and in permitting him to remain on the jury.

The defendant argues that Juror 105's comments indicated that he would start "at the [d]eath penalty, then wait for the evidence to determine if he should consider other options." Appellant's Br. at 37. The defendant argues that Juror 105 "wanted [the defendant] or the Court to change his mind," *id*., stating his objection at trial as Juror 105's alleged predisposition to "shift[] the burden to the defendant," Tr. at 801. Citing State v. Dye, 784 N.E.2d 469, 475-76 (Ind. 2003), the defendant argues that Juror 105's responses and opinions to voir dire questioning "showed [his] tendency to automatically impose death" and that "[t]his made [him] ineligible" to sit on the jury. Appellant's Br. at 42. The defendant concludes that "[t]hese challenges for cause should have been granted. [The defendant] was prejudiced because they were not." *Id*. at 43.

As a general rule, whether a particular juror should be excused for cause rests within the sound discretion of the trial court. McHenry v. State, 820 N.E.2d 124, 127 (Ind. 2005). An appellate court will not reverse a trial court's exercise of its discretion in this regard "[s]o long as that discretion is not exercised in an illogical or arbitrary manner." McElroy v. State, 553 N.E.2d

2

835, 838 (Ind. 1990) (internal quotation marks omitted). However, as noted in our previous opinion in this case, "A juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do." Ward, 903 N.E.2d at 955 (quoting Morgan v. Illinois, 504 U.S. 719, 729, 112 S.Ct. 2222, 2229-30, 119 L.Ed.2d 492, 502-03 (1992)). This is not to say, however, that a juror with any predisposition is incapable of impartiality. *Compare* Dye, 784 N.E.2d at 476 ("The requirement of jury impartiality embodied in the Due Process Clause of the Fourteenth Amendment permits a capital defendant to challenge for cause any prospective juror who would vote to impose death automatically upon a finding of guilt."), *with* Monserrate v. State, 265 Ind. 153, 156, 352 N.E.2d 721, 723 (1976) ("The constitutional standard of fairness requires that a defendant have a panel of impartial, indifferent jurors. Qualified jurors need not, however, be totally ignorant of the facts and issues involved. To hold [otherwise] would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." (internal quotation marks and citations omitted)).

When a prospective juror's preliminary or initial responses suggest the possibility of prejudicial bias, further questioning of the juror by the trial court is common practice to ascertain the depth of bias, or a juror's amenability to setting aside any such bias and to rendering a decision based solely on the evidence and the court's subsequent instructions. In Jackson v. State, 597 N.E.2d 950, 960-61 (Ind. 1992), this Court found no illogical or arbitrary use of discretion in the trial court's inquiries with two jurors. With respect to the first, the juror stated his belief that the death penalty was a mockery because death row inmates remained in prison for long periods of time at taxpayers' expense. He also said that a defendant with nothing to hide should take the stand. The juror went on, however, to answer that he could apply the law as the trial court instructed him. On appeal, this Court concluded that "[b]ecause [the juror] said he could apply the law as the court instructed, the trial court's decision not to excuse for cause was neither arbitrary nor illogical." *Id*. at 961. The second juror in question stated that he thought the defendant likely committed the crime based upon what he had heard in the media. Although the juror said he would not be influenced by what he already knew about the case and could form an opinion based upon what he heard in court, he also stated "that he believed that the defendant should

3

have to testify in his own defense and prove his innocence." *Id.* When the defense counsel challenged him for cause, the trial "court indicated that counsel's challenge was premature, instructed [the juror] on the relevant law, asked [the juror] if he could follow the law, received an affirmative response, and denied the challenge for cause." *Id.* Because the trial court's refusal to excuse the second juror for cause was "neither arbitrary nor illogical," it was affirmed on appeal. *Id.*[1]

During voir dire in the present case, the defendant's counsel asked Juror 105 whether he supported the death penalty. Juror 105 replied that he did, and the defendant's counsel inquired as to why. Juror 105 explained his reasoning thusly:

> Again, the tit for tat, you know, an eye for an eye, but in addition to that, that is probably the greatest deterrent that we have for other people. You know, if they consider killing somebody and know that they are going to die because of it, maybe they'll think twice.

Tr. at 772. Next, the defendant's counsel asked Juror 105 whether his support for the death penalty "is going to make you not consider the other sentences that the judge and all of us have been talking to you about all day long?" *Id.* Significantly, Juror 105 replied, "I don't think so. I need you to tell me the facts of the case. I also need you to teach me the law, and after I know all of the facts, I know the law, then I'll make my decision." The defendant's counsel then sought clarification, asking, "there's nothing that you've heard so far that makes you think . . . I'm not – I don't really care what anybody – what else anybody says, I'm [for] the death penalty?" *Id.* Juror 105 replied:

> What I've heard so far makes me lean towards the death penalty. You know, if I had to make a decision right now, it would probably be for the death penalty, but after you explained the case to me, I could possibly change my mind.

*Id.* at 772-73. Taking this to mean that Juror 105 would place the burden of proof on the defendant, rather than on the State, the defendant's counsel asked, "So it's my job, my burden to [persuade you to favor a lesser sentence than death]?" *Id.* Juror 105 answered:

> Your burden or the Court's burden and I guess *it's my burden* to *consider everything throughout the case and to know that I'm not making up my mind right now*. You know, I have to keep an open mind and – and that's what I want to do, is keep an open mind. If I'm not allowed to do that and I'm not allowed to hear anything more about this case,

---

[1] The jurors challenged in <u>Jackson</u> were guilt-phase jurors, whose first task was to determine guilt or innocence. Juror 105, whom the defendant challenges, was strictly a penalty-phase juror, as the defendant pleaded guilty. The right to impartial, indifferent jurors, however, also extends to penalty-phase juries. <u>Morgan</u>, 504 U.S. at 726-28, 112 S.Ct. at 2228-29, 119 L.Ed.2d at 500-02.

which I know is not true . . . the death penalty is what my decision would be. After hearing all of the evidence, hearing the law, et cetera, I may very – I may change my mind if warranted, if those scales are tipped.

*Id*. at 773-74 (emphasis added).

Before ruling on the defendant's for-cause challenge to Juror 105, the trial court addressed Juror 105 and two other prospective jurors as follows:

[Y]ou all indicated you could keep open minds and consider any possible sentence. Do you understand they don't – *the burden of proving the aggravating circumstances is on the government*? You all understand that, right? And if you're leaning towards a particular sentence at this point and I tell you that *you have to be impartial and consider all sentences pursuant to my instructions and the evidence you hear, can you do that, [Juror 105]*?

*Id*. at 799-800 (emphasis added). Juror 105 answered, "Yes." The trial court thus received an individual response from Juror 105 affirming that he understood that the burden of proof was on the State and not the defendant, and that he was willing to be impartial and consider all the sentencing options based on the evidence and the court's instructions.

The defendant's claim that Juror 105 "showed [his] tendency to automatically impose death," Appellant's Br. at 42, ignores that Juror 105 repeatedly volunteered that he had not made up his mind as to the penalty, and could not do so until hearing the facts and the law; and affirmatively replied to the court's questions as to whether he understood that the State had the burden of proof and as to his ability and willingness to consider penalties other than capital punishment. While Juror 105 did say that on the hypothetical facts as he understood them, his inclination was to give the death penalty for such an offense, he also made clear that his mind was not made up and that he could not arrive at a decision until hearing the actual facts of this case and understanding the law.

Because Juror 105 (1) repeatedly made clear that he had not yet made up his mind in the case (nor would he until hearing the facts and the law); (2) understood the court's unambiguous admonishment that the State, and not the defendant, bore the burden of proof; and (3) expressly acknowledged understanding that the burden of proof was on the State and that he would consider all sentencing options and follow the court's instructions, we cannot say that the trial court

5

acted illogically or arbitrarily in denying the defendant's for-cause challenge to Juror 105 and permitting him to serve on the jury.

Having granted rehearing, we decline to revise our previous conclusion affirming the trial court's death sentence.

Shepard, C.J., and Sullivan, Boehm, and Rucker, JJ., concur.