# FOR PUBLICATION



**FILED**
Sep 30 2013, 9:56 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. STEPHEN MILLER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

GARY OSWALT,                )
                                        )
     Appellant-Defendant,       )
                                          )
           vs.                  )     No. 35A02-1208-CR-684
                                          )
STATE OF INDIANA,        )
                                          )
     Appellee-Plaintiff.        )

---

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas M. Hakes, Judge
Cause No. 35C01-1104-FA-80

---

**September 30, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Gary Oswalt appeals his convictions and sentence for two counts of child molesting as class A felonies, child solicitation as a class D felony, and five counts of possession of child pornography as class D felonies. Oswalt raises five issues which we revise and restate as:

I. Whether the trial court abused its discretion when it refused to dismiss two jurors for cause, and then a third juror for cause after Oswalt claims he had exhausted his peremptory strikes;

II. Whether the trial court abused its discretion in denying Oswalt's motion to dismiss five counts of child pornography as class D felonies;

III. Whether the evidence is sufficient to sustain Oswalt's convictions for five counts of possession of child pornography as class D felonies;

IV. Whether Oswalt was denied a fair trial due to the charges of possession of child pornography; and

V. Whether Oswalt's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

FACTS AND PROCEDURAL HISTORY

J.B. was born on September 12, 1994 and after her parents' divorce, lived with her father and visited her mother. On September 25, 2002, J.B.'s mother married Oswalt and moved in with him. When J.B. was about seven years old, she and Oswalt were in a swimming pool and Oswalt showed J.B. his testicles and asked her if she wanted to touch them. She did and thought they felt bumpy. J.B. told her mother about the incident, but her mother did not believe her.

2

At a later time, Oswalt was in his bedroom and as J.B. walked by he asked her if she wanted to see something. Oswalt was sitting on the bed with his legs covered by a blanket. When J.B. walked in the room, Oswalt removed the blanket and exposed his erect penis. Oswalt asked J.B. if she wanted to touch his penis, and J.B. touched his penis with her hands. Oswalt asked J.B. to touch his penis with her mouth, and she touched his penis with her tongue. After J.B. stopped, Oswalt told J.B. that "it was our little secret," which was something that he would say multiple times. Transcript at 529.

Oswalt drove a truck for a living, and J.B. and other children sometimes took trips with him. Oswalt usually picked J.B. to accompany him. Oswalt told J.B.'s mother that he wanted J.B. on trips with him because he did not "get along very well" with her and that if J.B. went with him they "could talk things out and she couldn't get away from him." Id. at 794. During the trips, J.B. touched Oswalt's penis with her hands and mouth. Oswalt touched J.B.'s "privates" and vagina with his fingers both inside and outside. Id. at 534. During a trip to Texas, Oswalt tried inserting his penis into J.B. and it hurt J.B. "a lot." Id. These trips occurred over a period of years. When J.B. would not want to go on the trips with him, Oswalt would become frustrated with her, start "guilting her down, kind of making her feel like she's the bad guy." Id. at 748.

While Oswalt and J.B. were in a tent in the backyard of his house, Oswalt talked about using his mouth on J.B.'s vagina. Oswalt then touched J.B.'s vagina with his mouth and hands and put his tongue inside her "vagina hole." Id. at 543.

J.B. began to like the attention that Oswalt was giving her. Initially, she thought that the activities between her and Oswalt were perfectly normal and she trusted him.

3

After an assembly in elementary school regarding child molestation, J.B. realized that Oswalt was doing something wrong. She went to Oswalt and questioned what she was doing with him, and Oswalt told her that "all daughters and daddies do it." Id. at 547. Oswalt then showed J.B. websites with pictures of girls her age and men his age, and this convinced J.B. to keep doing things with him. Oswalt was aware that Hermione Granger, a character in Harry Potter, was J.B.'s favorite character and that J.B. viewed her as a role model, and he showed J.B. a naked picture of Hermione Granger. Oswalt also showed J.B. images of fathers and daughters on a laptop computer. He told her that her mother would not believe her and that it was their "little secret." Id. at 592.

The touches between Oswalt and J.B. stopped before J.B. became fourteen years old. Oswalt told J.B. that he wanted to "do the touches again" and would "do . . . guilt trips like nobody loves [him] anymore, things like that." Id. at 549. This continued until the day before J.B.'s sixteenth birthday, September 11, 2010, when Oswalt sent J.B. a text message that stated: "For your b-day present from me to you. . . a full massage. . . . You probably wont [sic] let me though. It would hurt me if you dont. [sic] lol. Nothing kinky.lol." State's Exhibit 5.

After hearing a sermon at her youth group about doing the right thing, J.B. wrote a letter to her mother because she was feeling guilty and thought that her mother had the right to know. Near the end of February 2011, the letter fell out of J.B.'s purse and her stepmother found it. J.B.'s father and stepmother discussed the letter with J.B.

J.B.'s mother also discussed the letter with her. When her mother confronted Oswalt, he initially stated that he was innocent and that he could not believe J.B. was

4

"doing this." Transcript at 822. Oswalt blamed J.B.'s mother for the allegations that were coming out because she "couldn't get [her] daughter to shut up." Id. at 823. Oswalt made J.B.'s mother call J.B. and threaten her that Oswalt would press charges against J.B.'s boyfriend, who was older than J.B., if she continued pressing charges against him.

J.B.'s father eventually contacted the police. On April 2, 2011, J.B. was interviewed at a child advocacy center. Her mother consented to a search of two computers, a desktop and a laptop.

Huntington Police Detective Matthew Hughes found four sites in the "recent history" of the computer including "www.youngestgirlsforyou.com, www. incestroom.com[,] www.mysexydaughter.net, and . . . www.dadsfuckdaughter.net." Id. at 439-440. Detective Hughes sent both computers for further examination. Jeremy Chapman, a forensic examiner with the Indiana State Police, did not retrieve any images of child pornography from the desktop computer but retrieved nine images and one movie as evidence from the laptop which had been deleted from the computer. Chapman found an image that was reported to be the actress that played Hermione in Harry Potter and a movie titled "PTHC – Open-NOBULL_family fun dad teaches bro and sis abt 9,10 kid sex incest pedophilia boy girl 12.38.mpg."[1] State's Exhibit 12 at 4. The movie had a creation date of 8:44 a.m. on May 24, 2010, and had a "last access date" of 7:25 a.m. on January 28, 2011. Transcript at 691. One of the images of child pornography had a creation date of September 21, 2009, and the image was last accessed on January 28, 2011.

---

[1] Chapman testified that "PTHC" stands for "pre-teen hardcore." Transcript at 689.

On April 28, 2011, the State charged Oswalt with Count I, child molesting as a class A felony; Count II, child molesting as a class A felony; Count III, child molesting as a class C felony; and Count IV, child solicitation as a class D felony. On August 19, 2011, the State moved to amend the charging information to add Counts V, VI, VII, VIII, and IX, which all alleged possession of child pornography as class D felonies. The court granted the State's motion to amend.

On February 29, 2012, Oswalt moved for severance of the charges of possession of child pornography from the remaining charges, and also filed a motion to dismiss Counts III, V, VI, VIII, and IX alleging that the charges were outside the statute of limitations. On March 15, 2012, the court denied Oswalt's motion for severance, denied his motion to dismiss Counts V, VI, VIII, and IX, and granted his motion to dismiss Count III.

During voir dire, Juror No. 7 stated: "I see somebody over there that I know, I don't know if they're involved in the case and if they were I, a relative I might have a problem." Id. at 179-180. At a sidebar conversation, Oswalt's counsel indicated that he did not know what Juror No. 7 was talking about and that he was hesitant to "bring it out in front of everybody," and the court stated: "Why don't you just ask her if, go through the . . . list of witnesses, go through the witnesses and ask if she knows or anybody knows any of the witnesses, let's do that." Id. at 180-181. Juror No. 7 then identified the person she recognized as a woman, that she knew her sisters, did not remember her last name, and stated: "I would rather not sit on a jury for somebody that's her . . . ." Id. at 182.

The following exchange then occurred:

6

DEFENSE COUNSEL:    It'd be fairer if you were not part of that jury then, is what you're saying?

JUROR #7:   It, I believe if it, if they weren't involved somehow in this case that I could be fair but if they were then I would probably be . . .

DEFENSE COUNSEL:    Unfair.

JUROR #7:   Not unfair but just . . .

DEFENSE COUNSEL:    Bias one way or the other?

JUROR #7:   Rather not have to cause their family or not cause their family but be involved in a family problem.

* * * * *

DEFENSE COUNSEL:    . . . . [C]an you be fair to Mr. Oswalt?

* * * * *

JUROR #7:   I can . . .

DEFENSE COUNSEL:    Assuming that you're [sic] problem is taken care of can you be fair?

JUROR #7:   Yes.

Id. at 182-185.  The court then read the witness list and the following exchange occurred:

COURT:     Okay.  [Juror No. 7] I have uh, just a couple questions.  I went through the list of witnesses and the only witness that you knew was the one witness that you'd already mentioned, is that correct?

JUROR #7:   As far as names, yeah.

COURT:     Understood, um, let's assume for a minute that you would know someone, would you still be able to listen to the evidence given in the case and the instructions given by me, the judge, to you and make a decision on that evidence and instructions alone?

JUROR #7:   Yes.

7

COURT: I would understand that it might make it more difficult but it wouldn't stop you from making a fair and impartial decision, would it?

JUROR #7: No.

Id. at 187.

Oswalt's counsel moved to strike Juror No. 7 for cause and stated that she was "familiar with Mr. Oswalt's mother and that family cause they're the only people that's sitting over there and particularly with her saying she'd rather not, I can't imagine her being unfair, I didn't go into it any further cause I saw who it was I think that's sufficient for cause." Id. at 188-189. The court indicated that its concern was that Juror No. 7 had indicated that she would listen to all the evidence and the instructions and would make a decision based on that alone. The court indicated that it would ask her if she had any knowledge about the case. Oswalt's counsel stated: "If she has knowledge about the family that may give her indirect knowledge about the case and in addition to that I'm, I, the reason I stopped and I came up to you, I'm afraid we could pollute a whole jury if she spouts off." Id. at 189. The court indicated that it would not let her "say anything about that." Id. After further discussion, Oswalt's attorney asked: "Is there any way I can uh, ask her questions individually without anybody else being around, any witnesses being around?" Id. at 192. The court answered: "No, I'll go so far as to ask her if she knows anything about the case . . . or any knowledge she has about the family would cause her to be . . . ." Id. Oswalt's counsel then stated: "I'll just take her for, I'll just take as a preempt." Id.

Juror No. 13 indicated that he assumed that Oswalt was guilty, but later indicated that he could remain impartial and "not make a decision on guilt until [he] heard the

8

evidence or decide if [Oswalt was] innocent until [he] heard the evidence." Id. at 229. Oswalt's counsel moved to strike Juror No. 13 for cause, the court denied the motion, and Oswald used a peremptory strike against Juror No. 13.

After further discussions, Oswalt's counsel had used nine peremptory strikes against potential jurors. Juror No. 28 indicated that he felt that he could be fair but upon further questioning indicated that the nature of the charges was going to make it more difficult for him to be fair. Specifically, Juror No. 28 stated:

> I mean I got uh, I got three little brothers and then I've got uh, three nieces now and uh, and I've got three nephews and I mean just with them spending time with them and you know, the, for something like that to happen to them would be hard I mean to deal with that's a, I mean it, it'd be hard for me to make it fair towards I think, Mr. Oswalt and then uh, I guess I mean the whole situation uh, to be fair towards him, you know, I feel that I'd be bias towards.

Id. at 272. The following exchange then occurred:

> DEFENSE COUNSEL:     So do you feel like you could be fair?
>
> JUROR #28: Yeah, I mean I could be fair if needed to be.
>
> DEFENSE COUNSEL:     And, and you say you could be fair, do you mean by that, that if you or [sic] Mr. Oswalt and someone in your mindset was sitting on the jury you'd be happy with that?
>
> JUROR #28: Uh, probably not, I mean.
>
> DEFENSE COUNSEL:     Okay, probably not.
>
> JUROR #28: Exactly.
>
> DEFENSE COUNSEL:     And, and why would you say probably not?
>
> JUROR #28: Cause you'd want somebody to have a fair trial, I mean, you want a, a jury that's open minded and willing to hear everything and uh, that's, I mean that's what you'd want.

DEFENSE COUNSEL: So someone with your mindset you wouldn't want on your jury because you don't think it'd be fair.

JUROR #28: Yep, yeah.

DEFENSE COUNSEL: And, and to that extent you don't think you would be fair.

JUROR #28: I believe that I gotta be (inaudible).

DEFENSE COUNSEL: Okay and even if the evidence is, is very clear, if the evidence is Mr. Oswalt did not commit these crimes you need to have . . .

JUROR #28: If the . . .

DEFENSE COUNSEL: . . . would you still be looking at it with colored glasses thinking well he probably did it anyway.

JUROR #28: I, I, I mean from what, from what the trial is I don't think I could be fair towards . . .

DEFENSE COUNSEL: You don't think you can . . .

JUROR #28: Yeah I don't think I could.

DEFENSE COUNSEL: Regardless as a practical matter.

JUROR #28: Yeah.

Id. at 273-274.

After questioning other potential jurors, Oswalt's counsel moved to strike Juror No. 25 as a peremptory challenge and moved to strike Juror No. 28 and another juror for cause. The court then questioned Juror No. 28 as follows:

COURT: Let me ask [Juror No. 28] a question. . . . do you agree that any individual who comes before the court or the jury is innocent until proven . . .

JUROR No. 28: (Inaudible.)

10

COURT:        . . . guilty?

JUROR No. 28:        (Inaudible.)

COURT:        Would you be able to if I instructed you to do so to listen to the evidence, listen to the instructions given to the court and make a decision only upon the evidence and instructions that you hear in court?

JUROR No. 28:        Yep.

COURT:        Now you indicated that you wouldn't be fair.  If I instruct . . .

JUROR No. 28:        I, I don't feel, I mean I, I don't feel comfortable with it.

COURT:        I understand that.

JUROR No. 28:        That's what I'm trying to . . .

COURT:        Okay.  So it's not a, not a not being fair, you don't feel comfortable just being here.

JUROR No. 28:        Yeah, I mean, not being here.

COURT:        Okay, but you understand the items that I just went through.

JUROR [No. 28]:        Yes sir.

Id. at 284-285.  The court then questioned the other juror and stated: "I'll give you cause on that one but I won't give you cause on that one."  Id. at 286.

Oswalt's counsel then stated: "Okay and with regards to [Juror No. 28] I believe that [Juror No. 25] is my last preempt."[2]  Id.  Oswalt's counsel also stated: "So I will ask for [Juror No. 28] uh, I can't preempt him but I'm going to say that I would preempt him if I could."  Id.  The following exchange then occurred:

---

[2] Oswalt's counsel actually stated: "Okay and with regards to juror number four I believe that [Juror No. 25] is my last preempt."  Transcript at 286.  However, this was the third round of twelve potential jurors and Juror No. 28 was sitting in the fourth seat so it appears that Oswalt's counsel was referring to Juror No. 28 when he stated "juror number four."

COURT: . . . [Oswalt's counsel] indicated and he's making a record he is preempting [Juror No. 25] but you feel that I should grant cause on [Juror No. 28].

DEFENSE COUNSEL:     Right.

COURT:     Okay.

DEFENSE COUNSEL:     And, and . . .

COURT:     And that's fine, I understand.

DEFENSE COUNSEL:     . . . and that's my last preempt so I can't use my preempt on [Juror No. 28].  If, if I counted my preempts right.

COURT:     You're, you're correct.

Id. at 287.  After further discussion, the following exchange occurred:

DEFENSE COUNSEL:     I will, I will take [Juror No. 28] as a preempt and [Juror No. 25] I want as a, as a preempt, uh, but I can't have it, either way I'm not, I've got a record that says I'm not getting that and I'm out of preempts and I'm not getting who I want.

COURT:     Let me understand, what you're doing is you're asking the court to instead of taking [Juror No. 25] as a preempt you're going to take [Juror No. 28]. . . .

DEFENSE COUNSEL:     (Inaudible.)

COURT:     . . . as a preempt.

DEFENSE COUNSEL:     Actually I'm just going to, I'm sorry, this awful, just leave [Juror No. 25] as the preempt, leave [Juror No. 28] as the cause that's been denied.

STATE:     Okay.

DEFENSE COUNSEL:     Cause that's the order of how they're going to be chosen.

Id. at 289-290.  The court then placed Juror No. 28 on the jury.

12

On June 28, 2012, the jury found Oswalt guilty of Counts I and II alleging child molesting as class A felonies; Count IV, child solicitation as a class D felony; and Counts V, VI, VII, VIII, and IX, possession of child pornography as class D felonies. The court found the fact that Oswalt was in a position of trust as an aggravating factor and Oswalt's lack of criminal history and hardship on family as mitigating factors. The court found that the aggravating factor outweighed the mitigating factors and sentenced Oswalt to forty years for Counts I and II with sixteen years suspended, two years with one year suspended for Count IV, and two years with one year suspended for Counts V, VI, VII, VIII, and IX. The court ordered that Counts V, VI, VII, VIII, and IX be served concurrent with each other and that "Counts I, II, IV and (V-IX) shall run consecutive to each other for a total executed sentence of fifty (50) years and thirty-four (34) years on probation." Appellant's Appendix at 11. In other words, the court sentenced Oswalt to an aggregate sentence of eighty-four years with fifty years executed and thirty-four years on probation.

DISCUSSION

I.

The first issue is whether the trial court abused its discretion when it refused to dismiss Juror Nos. 7, 13, and 28. Oswalt argues in part that Juror No. 7 indicated that she knew relatives and did not want to be involved with Oswalt's family. Oswalt contends that "[t]he only way for [him] to know the answer to [why she did not want to be involved] without the other jurors potentially developing negative attitudes towards [him] was to have individual voir dire." Appellant's Brief at 14. He also argues that "[i]f

13

individual voir dire was to be denied, then [Juror No. 7] could and should have been excused for cause." Id. at 14-15.

Oswalt contends that Juror No. 13 should have been excused for cause because he stated that he assumed that Oswalt was guilty prior to the start of the trial. Oswalt asserts that while the State attempted to rehabilitate Juror No. 13, the "rehabilitation of [Juror No. 13] is not convincing when one realizes he had a friend who was a victim of molestation." Id. at 21. Oswalt also contends that Juror No. 28 should have been excused for cause because he stated that he could not be fair and was not comfortable being there.

The State argues that only Juror No. 28 actually sat on the jury and the issue of whether the defendant had an impartial jury must focus on one or more of the jurors who actually sat and rendered the decision. Appellee's Brief at 17 (citing Ward v. State, 903 N.E.2d 946, 954-955 (Ind. 2009), adhered to on reh'g, 908 N.E.2d 595 (Ind. 2009), cert. denied, 546 U.S. 926, 126 S. Ct. 395 (2005)). The State contends that Oswalt waived appellate review of his claim regarding Juror No. 28 because he had not exhausted his peremptory challenges at the time that the court denied his request to strike Juror No. 28 for cause. The State contends that "[a]fter the trial court denied Defendant's motion to strike Juror 28 for cause, Defendant debated whether to use his final peremptory strike to remove Juror 28 instead of Juror 25." Id. at 20 (citing Transcript at 286-290). The State's position is that Oswalt elected not to use his final peremptory to remove Juror No. 28 and instead used it on Juror No. 25 even though he had not sought to have Juror No. 25 removed for cause. The State concludes that Oswalt waived his argument regarding

14

Juror No. 28 because he "had not exhausted his peremptory challenges at the time that the trial court refused to remove Juror 28, but Defendant nevertheless elected not to remove him from the jury." Id. at 21. Further, the State says that, waiver notwithstanding, the court reasonably questioned Juror No. 28 to clarify his confusing testimony. In his reply brief, Oswalt argues that he did not waive appellate review by failing to exhaust his peremptory challenges.

The right to a fair trial before an impartial jury is a cornerstone of our criminal justice system. Whiting v. State, 969 N.E.2d 24, 28 (Ind. 2012). In substance, it requires that a criminal defendant be given a fair trial by a panel of impartial, indifferent jurors. Id. Jurors need not be totally ignorant of the facts or issues involved in a case; rather, a constitutionally impartial juror is one who is able and willing to lay aside his or her prior knowledge and opinions, follow the law as instructed by the trial judge, and render a verdict based solely on the evidence presented in court. Id.; see also Monserrate v. State, 265 Ind. 153, 156, 352 N.E.2d 721, 723 (1976) (addressing jury selection following publicity of a case, indicating that to hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard, and holding that it is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court). The presence of even one biased juror on the jury is a structural error requiring a new trial. Whiting, 969 N.E.2d at 28.

The trial court has broad discretionary power in regulating the form and substance of voir dire examination. Hadley v. State, 496 N.E.2d 67, 72 (Ind. 1986). Individualized voir dire of prospective jurors may be required where the circumstances are highly unusual or potentially damaging to the defendant. Id. Nonetheless, the defendant has no absolute right to have each juror separately sequestered and questioned outside the presence of other jurors. Id. at 72-73.

Challenges for cause are the primary means by which biased jurors are struck. Whiting, 969 N.E.2d at 29. There are no limits on the number of for-cause challenges, but each must be supported by specified causes or reasons that demonstrate that, as a matter of law, the venire member is not qualified to serve. Id. The trial court has the inherent authority and responsibility to dismiss biased jurors for cause, either *sua sponte* or upon counsel's motion, and is afforded broad discretion in making these decisions. Id. On appeal, we afford substantial deference to the trial judge's decision respecting a challenge for cause and will find error only if the decision is illogical or arbitrary. Id.

"A juror's lack of knowledge or misunderstanding of the law will not necessarily disqualify him if the juror indicates that he or she can apply the law as instructed by the court, and refusal to strike a juror for cause under such circumstances is neither illogical nor arbitrary." Gooch v. State, 685 N.E.2d 152, 154 (Ind. Ct. App. 1997). "Moreover, when a juror has some preconceived notion about the guilt of a defendant, the trial court may, within its discretion, refuse a motion to strike for cause if the juror states that he or she will impartially render a verdict based upon the evidence." Id. Ind. Code § 35-37-1-5(a) provides that "[t]he following are good causes for challenge to any person called as a

16

juror in any criminal trial: . . . [t]hat the person has formed or expressed an opinion as to the guilt or innocence of the defendant. However, such an opinion is subject to subsection (b)," which provides:

> If a person called as a juror states that the person has formed or expressed an opinion as to the guilt or innocence of the defendant, the court or the parties shall proceed to examine the juror on oath as to the grounds of the juror's opinion. If the juror's opinion appears to have been founded upon reading newspaper statements, communications, comments, reports, rumors, or hearsay, and if:
>
> > (1)   the juror's opinion appears not to have been founded upon:
> >
> > > (A)   conversation with a witness of the transaction;
> > > (B)   reading reports of a witness' testimony; or
> > > (C)   hearing a witness testify;
> >
> > (2)   the juror states on oath that the juror feels able, notwithstanding the juror's opinion, to render an impartial verdict upon the law and evidence; and
> >
> > (3)   the court is satisfied that the juror will render an impartial verdict;
>
> the court may admit the juror as competent to serve in the case.

Ind. Jury Rule 18(a) provides: "In criminal cases the defendant and prosecution each may challenge peremptorily: . . . ten (10) jurors when neither the death penalty nor life without parole is sought in prosecutions for murder, and Class A, B, or C felonies, including enhancements . . . ." Similarly, Ind. Code § 35-37-1-3(b) governs peremptory challenges by a defendant and provides: "In prosecutions for . . . Class A, Class B, or Class C felonies, the defendant may challenge, peremptorily, ten (10) jurors." Generally, "a peremptory challenge may be for no cause whatsoever." Bond v. State, 273 Ind. 233,

17

237, 403 N.E.2d 812, 816 (1980).  Ind. Trial Rule 47(D) governs the examination of jurors and provides:

> The court shall permit the parties or their attorneys to conduct the examination of prospective jurors, and may conduct examination itself. The court's examination may include questions, if any, submitted in writing by any party or attorney.  If the court conducts the examination, it shall permit the parties or their attorneys to supplement the examination by further inquiry.  The court may impose an advance time limitation upon such examination by the parties or their attorneys.  At the expiration of said limitation, the court shall liberally grant additional reasonable time upon a showing of good cause related to the nature of the case, the quantity of prospective jurors examined and juror vacancies remaining, and the manner and content of the inquiries and responses given by the prospective jurors. The court may prohibit the parties and their attorneys from examination which is repetitive, argumentative, or otherwise improper but shall permit reasonable inquiry of the panel and individual prospective jurors.

"To preserve for appeal a claim that the trial judge erred in denying a challenge for cause, the defendant *must* demonstrate that he or she either used a peremptory challenge to remove the challenged juror or had already exhausted his or her allotment of peremptories."  Whiting, 969 N.E.2d at 29-30.  It is not sufficient that peremptories are eventually exhausted if such challenges were available when the for-cause challenge was denied but the juror was not struck.  Id. at 30.  The Indiana Supreme Court has "consistently held that to preserve any error the defendant bears the burden of demonstrating that *at the time she challenged the jurors for cause*, she had exhausted her peremptory challenges."  Robinson v. State, 453 N.E.2d 280, 281-282 (Ind. 1983).  An appellate court will review a trial court's denial of a challenge for cause only if the defendant complies with the exhaustion rule.  Whiting, 969 N.E.2d at 30.  Even where a defendant preserves a claim by striking the challenged juror peremptorily, reversible error occurs only where the defendant eventually exhausts all peremptories and is forced to

accept either an incompetent or an objectionable juror. Id. "An 'incompetent' juror is one who is removable for cause, while an 'objectionable' juror is one who is not removable for cause but whom the party wishes to strike."[3] Id. at 30 n.7.

"The exhaustion rule is sound policy." Id. "In [Merritt v. Evansville-Vanderburgh Sch. Corp., 765 N.E.2d 1232, 1236 (Ind. 2002)], Chief Justice Shepard, writing for a unanimous Court, explained that permitting litigants 'to seek a new trial when they had a remedial tool available and chose not to use it could lead to harsh results.'" Id. An additional policy reason supports the exhaustion rule. Id. at 31. "Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." Id. (quoting Skilling v. United States, ___ U.S. ___, 130 S. Ct. 2896, 2918 (2010)). "Clearly, 'the in-the-moment voir dire affords the trial court a more intimate and immediate basis for assessing a venire member's fitness for jury service.'" Id. (quoting Skilling, ___ U.S. at ___, 130 S. Ct. at 2918). The trial judge is in the best position to assess the demeanor of prospective jurors. Whitehair v. State, 654 N.E.2d 296, 306 (Ind. Ct. App. 1995). "If the trial court refuses to remove the juror for cause and the defendant

---

[3] The Court in Merritt v. Evansville-Vanderburgh Sch. Corp., 765 N.E.2d 1232, 1236 n.6 (Ind. 2002), noted: "The various state positions on this issue occupy points along a continuum. For example, New Jersey, like Oklahoma, requires an appellant to show that an incompetent juror actually served to prevail on a claim of wrongful denial of a challenge for cause. Arkansas, Florida, and Texas all follow a more lenient approach similar to Indiana's, and require only that the appellant show that an objectionable juror served because he used a peremptory strike to correct an erroneous denial of a for-cause challenge. Colorado is even more generous, requiring only that the appellant show the use of a peremptory strike to correct an erroneous denial of a challenge for cause and exhaustion of all available peremptories."

chooses not to remove the juror peremptorily, then there is a fairly strong indication that the parties who viewed the whole picture did not consider the juror sufficiently biased to warrant removal." Whiting, 969 N.E.2d at 31. "It is therefore difficult for an appellate court to justify holding otherwise on the basis of the cold record, which presents only a small part of the whole picture." Id.

To the extent that the State argues that we need not address Oswalt's arguments regarding Juror No. 7 and Juror No. 13, we will discuss Ward v. State, 903 N.E.2d 946 (Ind. 2009), which was cited by the State. In Ward, the defendant argued that the trial court erred in failing to grant his for-cause challenges as to ten jurors because their opinions and responses showed a tendency to recommend the death penalty automatically upon the fact of the defendant's guilt, and that he was prejudiced because he had to use all of his peremptory challenges on these jurors and was thus forced to accept other jurors who although not challengeable for cause were biased against his evidence. 903 N.E.2d at 954.

The Court discussed Ross v. Oklahoma, 487 U.S. 81, 108 S. Ct. 2273 (1988), in which the trial court denied the defense's for-cause challenge to a prospective juror, and the defense exercised a peremptory challenge, ultimately using all of its allotted peremptory challenges. Id.; 487 U.S. at 83-84, 108 S. Ct. at 2276. The defense did not, however, challenge for cause any of the jurors who actually decided the case. 487 U.S. at 84, 108 S. Ct. at 2276. The Ross Court found that any claim that the jury was partial must focus not on the removed juror, but rather on the jurors who ultimately sat. Id. at 86, 108 S. Ct. 2277. The Court in Ross stated:

20

> Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated. We conclude that no violation of petitioner's right to an impartial jury occurred.

Id. at 88, 108 S. Ct. at 2278 (internal citations omitted). The Ross Court concluded that failing to dismiss the juror for cause, while error, did not deprive petitioner of an impartial jury or of any interest provided by the State.[4] Id. at 91, 108 S. Ct. at 2280.

The Indiana Supreme Court held that "[i]n light of this reasoning, it is irrelevant whether the trial court erred in denying any of the defendant's challenges for cause," and that "[v]iewed properly through Ross's lens, the issue of whether the defendant had an impartial jury must focus on one or more of the jurors who actually sat and rendered the decision." Ward, 903 N.E.2d at 954-955. The Court declined the defendant's request for reversal premised on the trial court's failure to grant his challenges for cause with respect to jurors he later removed by peremptory challenge. Id. at 955. On rehearing, the Court stated: "Relying upon Ross v. Oklahoma, 487 U.S. 81, 108 S. Ct. 2273, 101 L.Ed.2d 80 (1988), we held that even if the trial court erred in denying the defendant's for-cause challenges, the salient inquiry is whether any of the jurors who ultimately sat was biased." 908 N.E.2d 595, 596 (Ind. 2009). The Court observed that on rehearing it understood that the defendant sought in his appeal not only to assert error in his loss of

---

[4] We note that the Court in Whiting observed that the Supreme Court in Ross "rejected a constitutional challenge to Oklahoma's exhaustion rule, which is more stringent than Indiana's." Whiting, 969 N.E.2d at 32 (citing Merritt, 765 N.E.2d at 1236).

21

peremptory challenges due to the trial court's denial of his challenges for cause, but also specifically to claim error in denying the for-cause challenge to Juror No. 105 and in permitting him to remain on the jury. Id. The Court addressed Juror No. 105's comments, concluded that the trial court did not act illogically or arbitrarily in denying the defendant's for-cause challenge to Juror No. 105 and permitting him to serve on the jury, did not address the for-cause challenges to the other jurors, and declined to revise its previous opinion affirming the trial court's death sentence.[5] Id. at 599.

To the extent that the original opinion in Ward and the opinion on rehearing suggest that we need not address Oswalt's for-cause motions related to Juror No. 7 and Juror No. 13 because they did not actually end up serving on the jury, we observe that in 2012, three years after Ward, the Indiana Supreme Court handed down Whiting which, as mentioned earlier, held that the issue of the propriety of a refusal to grant a motion to strike for cause can be preserved by the use of a peremptory challenge. Specifically, the Court held: "Indiana law is well settled. To preserve for appeal a claim that the trial judge erred in denying a challenge for cause, the defendant *must* demonstrate that he or she either used a peremptory challenge to remove the challenged juror or had already exhausted his or her allotment of peremptories." Whiting, 969 N.E.2d at 29-30 (citing Merritt, 765 N.E.2d at 1235; Robinson, 453 N.E.2d at 282; Monserrate, 265 Ind. at 157, 352 N.E.2d at 723). The Court also indicated that the use of a peremptory strike can preserve the issue for appeal. Specifically, the Court stated that "even *where a defendant preserves a claim by striking the challenged juror peremptorily*, reversible error occurs

---

[5] In its opinion on rehearing in Ward, the Court did not explicitly address whether Juror No. 105 was objectionable.

only where the defendant eventually exhausts all peremptories and is forced to accept either an incompetent or an objectionable juror." Id. at 30 (emphasis deleted and added). Based upon Whiting, we will address Oswalt's arguments regarding Juror No. 7 and Juror No. 13. See also Merritt, 765 N.E.2d at 1237 ("[Y]ou must use any available peremptories to correct erroneous denials of challenges for cause. If on appeal you then prove both the erroneous denial and that you were unable to strike another objectionable juror because you exhausted your peremptories, you are entitled to a new trial, full stop.").

With respect to Juror No. 7, the record reveals that during questioning from the court, Juror No. 7 indicated that she would be able to listen to the evidence and the instructions and make a decision on the evidence and instructions alone and that her knowledge would not stop her from making a fair and impartial decision. After discussion between the court and Oswalt's counsel, the court stated: "I'll go so far as to ask her if she knows anything about the case . . . or any knowledge she has about the family would cause her to be . . . ." Transcript at 192. Oswalt's counsel then stated: "I'll just take her for, I'll just take as a preempt." Id. While further questioning by the court may have revealed additional information, we cannot say based upon the record that the circumstances were highly unusual or potentially damaging to the defendant or that the trial court abused its discretion in refusing to strike Juror No. 7 for cause. See Fox v. State, 717 N.E.2d 957, 962 (Ind. Ct. App. 1999) (affirming the trial court's denial of challenge to juror who knew an individual on the witness list but stated he would do his "very" best to render a fair and impartial verdict), reh'g denied, trans. denied.

23

To the extent that Oswalt challenges Juror No. 13, we observe that while Juror No. 13 initially indicated that he assumed that Oswalt was guilty, the prosecutor later stated: "you may not have heard me say it but one of the first things I said when I got up here and my first panel was the state has the burden of proving guilt beyond a reasonable doubt, that's my burden, but I slipped in there a comment too about uh, sitting there today he's innocent and it's our burden to prove beyond a reasonable doubt." Transcript at 225. Juror No. 13 later indicated that he could remain impartial and "not make a decision on guilt until [he] heard the evidence or decide if [Oswalt is] innocent until [he] heard the evidence." Id. at 229. After Oswalt's counsel moved to strike Juror No. 13, the court stated: "I think [the prosecutor] . . . explained to them that there is the presumption of innocence, they agreed to that and they agreed to listen to the evidence and in fact I've listed [Juror No. 13] in the same manner." Id. at 240. We cannot say that the court abused its discretion by refusing to grant Oswalt's motion to strike Juror No. 13 for cause.

Because the court did not abuse its discretion in refusing to strike Juror No. 7 or Juror No. 13 for cause, Oswalt was not erroneously deprived of peremptory strikes. See Williams v. State, 426 N.E.2d 662, 669 (Ind. 1981) (addressing the defendant's argument that the erroneous denial of his earlier challenges for cause illegally reduced the number of available peremptory challenges and holding that "[a]s the earlier ruling was not error, it could not have resulted in an impermissible restriction upon the availability of the requisite number of peremptory challenges afforded him").

With respect to Juror No. 28, we cannot say that Oswalt exhausted his peremptory strikes at the time that he moved to strike this juror. The record reveals that after questioning Juror No. 25 and Juror No. 28, Oswalt's counsel moved to strike Juror No. 25 as a peremptory challenge and moved to strike Juror No. 28 and another juror for cause. However, after further discussion, Oswalt's counsel stated that he would use his final peremptory challenge against Juror No. 28 instead of Juror No. 25, but then ultimately decided to use the final peremptory challenge against Juror No. 25. Thus, the challenge was available at the time Juror No. 28 was not struck. Based upon the record, we cannot say that Oswalt has demonstrated that he had already exhausted his allotment of peremptory strikes at the time that he moved to strike Juror No. 28 for cause.[6] Because we find that Oswalt failed to exhaust his peremptory challenges at the time that he moved to strike Juror No. 28, Oswalt has failed to preserve his claim and has waived review of the trial court's denial of his request to strike Juror No. 28 for cause.

## II.

The next issue is whether the trial court abused its discretion in denying Oswalt's motion to dismiss five counts of child pornography as class D felonies. Oswalt argues that "[i]f the possession charges were committed within the Statute of Limitation, then the possession had to have occurred between August 19, 2006 and August 19, 2011."

_____

[6] We acknowledge that at one point Oswalt's counsel stated: "and that's my last preempt so I can't use my preempt on [Juror No. 28]. If, if I counted my preempts right," and the court responded: "You're, you're correct." Transcript at 287. If this was the extent of the discussion, we would agree that Oswalt had exhausted his peremptory strikes. See Ward v. State, 903 N.E.2d 946, 953 n.7 (Ind. 2009) ("[T]he defendant points out that the trial court expressly noted that the defense had exhausted its peremptory challenges as to the regular jurors. We accept the trial court's determination and treat the defendant's claim of complete exhaustion to be accurate."). However, there was then indecision on the part of Oswalt's counsel and discussion on whether to use his final peremptory strike on Juror No. 25 or Juror No. 28, and he chose to use it on Juror No. 25.

Appellant's Brief at 10. Oswalt also cites to the probable cause affidavit which mentions that Oswalt showed J.B. pornography on a computer and then states that J.B. "could not give specific dates of when they occurred. She did estimate them to be at the very least five years prior." Id. at 11 (quoting Appellant's Appendix at 26).

The State argues that "[a]s a preliminary matter, count seven alleges a specific date range well within the limitations period, so his argument does not apply to that count," and that the court properly denied Oswalt's motion to dismiss the remaining counts as well. Appellee's Brief at 12. The State contends that evidence that Oswalt had a pattern of showing the victim pornographic images similar to those found on his laptop computer may be relevant to proving his knowledge of and intent to possess the images, but it does not matter if the images were the same images that he showed the victim previously. The State contends that the charges and accompanying affidavits were sufficient to alert Oswalt that the State alleged that he possessed digital images of child pornography at or near the time that the police seized his computers.

We review a trial court's ruling on a motion to dismiss a criminal charge for an abuse of discretion. Reeves v. State, 938 N.E.2d 10, 14 (Ind. Ct. App. 2010), reh'g denied, trans. denied; State v. Lindsay, 862 N.E.2d 314, 317 (Ind. Ct. App. 2007), trans. denied. We will reverse a trial court's decision for an abuse of discretion where the court's decision is clearly against the logic and effect of the facts and circumstances. Reeves, 938 N.E.2d at 14.

A statute of limitation is designed to insure against prejudice and injustice to a defendant which is occasioned by a delay in prosecution. Lindsay, 862 N.E.2d at 317.

26

The limitation period seeks to strike a balance between a defendant's interest in being placed on notice so as to be able to formulate a defense for a crime charged and the State's interest in having sufficient time to investigate and develop a case. Id. Any exception to the limitation period must be construed narrowly and in a light most favorable to the accused. Id.

Ind. Code § 35-41-4-2 provides that "[e]xcept as otherwise provided in this section, a prosecution for an offense is barred unless it is commenced . . . within five (5) years after the commission of the offense, in the case of a . . . Class D felony . . . ." "Generally, the State is required to allege facts in the Information sufficient to bring the charge within the statutory limitation period." Willner v. State, 602 N.E.2d 507, 508 (Ind. 1992); see also Ind. Code § 35-34-1-2(a)(5) (providing that a charging information "shall be in writing and allege the commission of an offense by . . . stating the date of the offense with sufficient particularity to show that the offense was committed within the period of limitations applicable to that offense"). One of the reasons for this requirement is to ensure that only timely-filed charges proceed to trial. Willner, 602 N.E.2d at 508 (citing Ulmer v. State, 14 Ind. 52, 55 (1859)). Indeed, "[a]n information alleging a time outside the statute of limitations which does not allege facts sufficient to constitute an exception to the statute is subject to a motion to dismiss." Greichunos v. State, 457 N.E.2d 615, 617 (Ind. Ct. App. 1983).

Counts V through IX each alleged possession of child pornography as class D felony, and each was filed on August 19, 2011. As pointed out by the State, Count VII alleged that Oswalt possessed child pornography "[o]n or about September 21, 2009 until

27

April 2, 2011 . . . ." Appellant's Appendix at 58. Thus, the State alleged facts in the charging information related to Count VII to bring the charge within the statutory limitation period. Counts V, VI, VIII, and IX alleged possession of child pornography as class D felonies and each stated in part that "[o]n or before April 2, 2011, in Huntington County, Indiana, Gary Wayne Oswalt knowingly or intentionally possessed" child pornography. Id. at 56-60. We conclude that the language used in Counts V, VI, VIII, and IX alleged facts that bring the charges within the statutory limitation period.

Even assuming that we may examine the probable cause affidavit, the portion of the affidavit to which Oswalt points suggests only that Oswalt showed J.B. pictures on a computer prior to five years earlier but not that the pictures that he showed her more than five years ago were the same pictures that the State was alleging under Counts V through IX or that Oswalt did not possess child pornography within the five years prior to the filing of the charging information. Under the circumstances, we cannot say that the trial court abused its discretion in denying Oswalt's motion to dismiss the charges of possession of child pornography.

## III.

The next issue is whether the evidence is sufficient to sustain Oswalt's convictions for five counts of possession of child pornography as class D felonies. Oswalt does not dispute that there was pornography on the computer but argues that "how the images were on the computer and the ability to know such images were present demonstrates the lack of sufficient evidence to support a conviction of the Defendant on the possession charges." Appellant's Brief at 12. Oswalt points out that the expert "spoke of a creation

28

date of the pornographic exhibits and established that a creation date is not the date an image is placed on a computer, but the date it is placed at a given location." Id. Oswalt argues that "[i]n order to have sufficient evidence to convict [him] the State needed to prove he knew the images were on the computer and that he knew they were on the computer after August 19, 2006. This the State did not do." Id. at 13. The State argues that the evidence was sufficient to permit the jury to conclude that Oswalt knowingly or intentionally possessed the pornography within the limitations period.

When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. Jordan v. State, 656 N.E.2d 816, 817 (Ind. 1995), reh'g denied. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. Id. We will affirm the convictions if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Id.

In April 2011, which was the time alleged in the relevant counts, Ind. Code § 35-42-4-4, which governs the offense of possession of child pornography as a class D felony, provided:

A person who knowingly or intentionally possesses:

    (1)    a picture;

    (2)    a drawing;

    (3)    a photograph;

    (4)    a negative image;

    (5)    undeveloped film;

29

<blockquote>

(6)    a motion picture;

(7)    a videotape;

(8)    a digitized image; or

(9)    any pictorial representation;

that depicts or describes sexual conduct by a child who the person knows is less than sixteen (16) years of age or who appears to be less than sixteen (16) years of age, and that lacks serious literary, artistic, political, or scientific value commits possession of child pornography, a Class D felony.
</blockquote>

(Subsequently amended by Pub. L. No. 6-2012, § 226 (eff. Feb. 22, 2012); Pub. L. No. 181-2013, § 1 (eff. May 7, 2013); Pub. L. No. 214-2013, § 38 (eff. July 1, 2013); Pub. L. No. 158-2013, § 440 (eff. July 1, 2014)).

The record reveals that Oswalt's wife testified that the laptop computer was purchased in June 2006. Thus, the computer was purchased about two months prior to the beginning of the five-year statute of limitations period. Jeremy Chapman, a forensic examiner with the Indiana State Police, testified that he retrieved nine images and one movie as evidence from Oswalt's laptop that were deleted from the computer and that the charges related to four of the images and the movie. The movie had a creation date of 8:44 a.m. on Monday May 24, 2010, and had a "last access date" of 7:25 a.m. on Friday January 28, 2011. Transcript at 691. J.B.'s mother testified that Oswalt would typically "take a run out on Monday night," that he would usually be at the house when she left for work in the morning, that the laptop was usually at the house when she left for work on Monday mornings, and that "Friday was debatable on whether or not he had his kids that weekend." Id. at 812-813. Chapman explained on cross-examination that a file is given a creation date every time that the file is moved to a different folder and that the date that

the image was last accessed does not necessarily mean that a person looked at it because the file could be accessed for a virus scan. The creation date for an image under Count VII was 9:37 a.m. on Monday September 21, 2009, and the image was last accessed at 7:30 a.m. on Friday January 28, 2011. An image related to Count VI contained a logo that was the same as the logo for the image related to Count VII, and the logo appeared on three of the four images.

On redirect examination, Chapman testified that someone downloaded the movie onto the computer, that he was not aware of any "process by which you would get you know, more than half of two hundred and twenty that were consistent with pornography or child pornography on a computer through a virus or some way." Id. at 724. Chapman also testified that what he saw in the internet browsing history was consistent with someone who was looking for child pornography and that he was not surprised to find examples of child pornography. Detective Hughes found four sites in the "recent history" of the computer including "www.youngestgirlsforyou.com, www.incestroom.com[,] www.mysexydaughter.net, and . . . www.dadsfuckdaughter.net." Id. at 439-440.

J.B. testified that Oswalt primarily used the laptop, that the rule was that the laptop computer had to be in the same room as Oswalt and her mother, that she never looked up any child pornography on the laptop, that she was never allowed to take the laptop into her bedroom, that she did not remember seeing her brothers take the laptop into the bedroom, that she never saw her brothers or mother looking at child pornography on the laptop, and that the only person in her family that she knew that ever showed her

inappropriate pictures of children was Oswalt. J.B.'s mother testified that she never searched for nor looked at child pornography or searched for incest.

Based upon our review of the record, we conclude that evidence of probative value exists from which the jury could have found that Oswalt committed the charged offenses.

## IV.

The next issue is whether Oswalt was denied a fair trial due to the charges of possession of child pornography. Oswalt appears to argue that the charges related to possession of child pornography so permeated the trial as to make a fair trial impossible. He mentions the definition of fundamental error but does not apply the doctrine to this case. He cites Lannan v. State, 600 N.E.2d 1334 (Ind. 1992), for the proposition that that case "eliminated the depraved sexual instinct concept, however, the trying of pornography with child molest charges creates essentially the same difficulty as using past crimes to demonstrate a propensity to commit additional sexually related crimes." Appellant's Brief at 21. Oswalt argues that "[f]airness, in this type of case requires the possession charges to be tried separately." Id. at 22.

The State contends that Oswalt has waived his claim for failure to make a cogent argument. The State also argues that Oswalt does not challenge the trial court's denial of his motion to have the charges severed and has waived such an argument. The State's position is that, waiver notwithstanding, Oswalt received a fair trial on all of the charges and his unsupported assertions do not establish that fundamental error occurred.

To the extent that Oswalt cites Lannan, we observe that the Court in Lannan addressed the defendant's argument that the Court should abandon the "depraved sexual

32

instinct" exception under which evidence about uncharged acts was admitted. 600 N.E.2d at 1335. The Court abandoned the exception and focused its inquiry on whether prior acts were admissible under any exception in Ind. Evidence Rule 404(b). Id. at 1341. The Court in Lannan dealt with evidence of uncharged conduct, unlike the situation here. Specifically, the Court held: "Had the State filed an additional count (or counts) charging Lannan with fondling V.E. (or both girls), their testimony would have been admissible as direct evidence of a fact in issue. However, these crimes and V.E.'s allegations of additional instances of intercourse were uncharged." Id. Accordingly, we do not find Lannan instructive. Given that Lannan is the only authority cited by Oswalt other than cases he mentions related to fundamental error, we cannot say that he has developed a cogent argument that the trial court erred by denying his motion to sever the charges of possession of child pornography. Consequently, such arguments are waived.[7] See, e.g., Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); Shane v. State, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

---

[7] We acknowledge that in Wells v. State, 983 N.E.2d 132, 132 (Ind. 2013), the Court published an order vacating its prior order granting transfer in a case involving the issue of a trial court's denial of a motion for severance of offenses pursuant to Ind. Code § 35-34-1-11. Justice Rucker authored a dissenting opinion in which Chief Justice Dickson concurred. Justice Rucker concluded that under the facts of that case, he would grant transfer and remand the case to the trial court for a hearing to determine "(1) whether the offenses with respect to each alleged victim are of the same or similar character; (2) whether evidence of each of the offenses is relevant to some material issue at trial of all the other offenses under Indiana Evidence Rule 404(b); and (3) whether the evidence of the other offenses even though relevant should be excluded under Indiana Evidence Rule 403." 983 N.E.2d at 139-140. Justice Rucker also wrote that "[i]f the hearing reveals that evidence of the offenses for which Wells is charged would be inadmissible in separate trials of the same offenses, then he would be entitled to severance as a matter of right under Indiana Code section 35-34-1-1[1]." Id. at 140. Oswalt does not cite Ind. Code § 35-34-1-11 or Ind. Evidence Rules 403 and 404 or develop an argument beyond citing to Lannan.

Waiver notwithstanding, we note that two or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses: "(1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." Ind. Code § 35-34-1-9 (2004). "Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses." Ind. Code § 35-34-1-11(a) (2004). See also Brown v. State, 650 N.E.2d 304, 305-306 (Ind. 1995). "In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense . . ." Ind. Code § 35-34-1-11(a). In doing so, the trial court is to consider: (1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense. Ind. Code § 35-34-1-11(a); Brown, 650 N.E.2d at 305-306. Where severance is not mandated by Ind. Code § 35-34-1-11(a), "[w]e will only reverse the judgment and order new, separate trials if the defendant can 'show that in light of what actually occurred at trial, the denial of a separate trial subjected him to such prejudice that the trial court abused its discretion in refusing to grant his motion for severance.'" Brown, 650 N.E.2d at 306 (quoting Hunt v. State, 455 N.E.2d 307, 312 (Ind. 1983)). See also Craig v. State, 730 N.E.2d 1262, 1265 (Ind. 2000) ("A trial court's refusal to sever charges under these circumstances is

reviewed for an abuse of discretion."). Oswalt has failed to show prejudice, and we find no abuse of discretion here.

V.

The next issue is whether Oswalt's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Oswalt concedes that he violated an extremely serious position of trust but alleges that "the injury done to the victim may have been less because no physical threats were made, no additional physical injury inflicted and [J.B.] apparently maintained her sense of self." Appellant's Brief at 23. Oswalt argues that J.B. "also retained a sense of control over the abuse in that it was her idea for the sexual touches to stop, even though [he] wanted the touches to continue." Id. at 24. Oswalt also argues that "[t]he duration of the oral sex in the bedroom which constituted Count II was for a very short amount of time not more than thirty (30) seconds, and she is the one that stopped." Id.

The State maintains that Oswalt horribly abused his position of trust as J.B.'s stepfather to abuse her over a seven-year period, and that he possessed four digital images and a video depicting child pornography and there were indications that he had formerly possessed many more such videos that could not be recovered. The State

alleges that Oswalt did not lead a law-abiding life for many years as he repeatedly molested J.B., and that Oswalt "blamed J.B.'s mother when the allegations were revealed for not muzzling J.B." and had J.B.'s mother threaten to retaliate against J.B.'s older boyfriend if J.B. persisted and pressed charges against him. Appellee's Brief at 26.

Our review of the nature of the offense reveals that Oswalt was J.B.'s stepfather and molested her over the course of seven years. Oswalt told J.B. that "it was our little secret" on multiple occasions. Transcript at 529. After a presentation on molestation at school, J.B. questioned what she was doing with Oswalt, and he told her that "all daughters and daddies do it." Id. at 547. He then showed J.B. websites with pictures of girls her age and men his age, and this convinced J.B. to keep doing such things with Oswalt. Oswalt also possessed child pornography on his computer.

Our review of the character of the offender reveals that Oswalt has no criminal history. The PSI stated that Oswalt "scored as low risk to re-offend, but was automatically overrode to HIGH risk due to the nature of the offense." Appellant's Appendix at 243.

After due consideration of the trial court's decision, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

For the foregoing reasons, we affirm Oswalt's convictions and sentence.

Affirmed.

RILEY, J., and BRADFORD, J., concur.

36